66 F.3d 36
 Edmund JAYARAJ, Plaintiff-Appellee,
v.
Richard J. SCAPPINI, Chairman, Civil Service Commission;
Shyla Wilkinson, Commissioner, Civil Service Commission;
Antoine Gary; James Valentino; Paul Conant; James
Sinclair; Civil Service Commission of the City of
Waterbury; City of Waterbury; Edward D. Bergin, Jr.,
Mayor, and Francis Sullivan, Chief Assistant Aide,
Defendants-Appellants.
 No. 1885, Docket 95-7195.
 United States Court of Appeals,
Second Circuit.
 Argued May 10, 1995.
Decided Sept. 14, 1995.
 
 J. Christopher Rooney, New Haven, CT (Carmody & Torrance, of counsel), for defendants-appellants.
 Thomas W. Meiklejohn, New Haven, CT (Gould, Livingston, Adler & Pulda, P.C., of counsel), for plaintiff-appellee.
 Before: NEWMAN, FEINBERG and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 Edmund Jayaraj, Director of Personnel for the City of Waterbury, Connecticut ("City"), brought suit under 42 U.S.C. Secs. 1981 and 1983 challenging the City's failure to renew his employment contract for an additional term. Jayaraj sought a preliminary injunction which would allow him to continue in his position pending adjudication of the merits of his claims. The United States District Court for the District of Connecticut (Dorsey, J.) granted the preliminary injunction, and the City appeals.
 
 
 1
 On appeal, the City challenges the district court's finding that Jayaraj would suffer irreparable harm if an injunction were not issued. We agree with the City and conclude that the plaintiff failed to establish irreparable harm and, consequently, that the district court erred in granting the preliminary injunction. Furthermore, because one aspect of Jayaraj's federal claims, that the City's failure to renew his contract violated his rights under the Due Process clause of the Fourteenth Amendment, depends upon an interpretation of Connecticut state law, we hold that abstention under Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) is warranted. Accordingly, we vacate the preliminary injunction and remand to the district court with directions to certify this question of state law to the Connecticut Supreme Court, and to stay further proceedings pending a response to the certified question.
 
 Background
 
 2
 Jayaraj was first hired as Director of Personnel for the City under a three-year contract in February 1983. He was responsible for implementing a merit-based hiring system and conducting examinations to rank the qualifications of prospective employees. His contract was subsequently renewed by the Waterbury Civil Service Commission in 1986, 1989, and 1992. The most recent three-year term was due to expire in February 1995.
 
 
 3
 Under the terms of the employment contract, the Civil Service Commission "shall notify the Director in writing whether or not the Contract will be renewed for an additional three year period." Accordingly, the Civil Service Commission notified Jayaraj that it would consider whether to renew his contract for an additional three-year term at a meeting scheduled for November 1, 1994. Jayaraj attended that meeting, responded to questions from the Commissioners regarding his performance, and witnessed the Commissioners' vote not to renew his contract. Following the meeting, Jayaraj demanded a new hearing and opportunity to present a defense of his employment performance. This request was denied by the Civil Service Commission on January 17, 1995.
 
 
 4
 On January 18, 1995, Jayaraj brought suit in district court under 42 U.S.C. Secs. 1981 and 1983. Principally, Jayaraj alleged that the Commission terminated him in retaliation for his outspoken opposition to patronage hiring by the City, in violation of the First Amendment, and, further, that the November 1st meeting did not afford him due process, in violation of the Fourteenth Amendment. Jayaraj seeks equitable and injunctive relief as well as compensatory and punitive damages.
 
 
 5
 The district court conducted a hearing on the preliminary injunction on February 6, 1995, and issued a written opinion, granting the injunction, on February 9, 1995. With regard to the First Amendment claim, the court held that an injunction was not warranted as Jayaraj had failed to demonstrate irreparable harm and because Jayaraj would have an adequate remedy at law for any violation which may have occurred. The court rejected Jayaraj's argument that he had a right to a pretermination hearing in order to vindicate his First Amendment rights.
 
 
 6
 As to Jayaraj's due process claim, however, the district court found that Jayaraj would suffer irreparable injury based on a variety of asserted potential harms which would result from his non-employment by the City pending disposition of his case.
 
 Discussion
 I. Preliminary Injunction
 
 7
 The issuance of a preliminary injunction rests within the sound discretion of the district court and will be disturbed only where there has been an abuse of that discretion or a clear mistake of law. Triebwasser & Katz v. American Tel. & Tel. Co., 535 F.2d 1356, 1358 (2d Cir.1976). To obtain a preliminary injunction, the moving party has the burden of showing 1) irreparable harm and 2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tilting decidedly towards the plaintiff. Loveridge v. Pendleton Woolen Mills, Inc., 788 F.2d 914, 916 (2d Cir.1986). Because we hold that Jayaraj failed to establish that he would suffer irreparable harm in the absence of an injunction, there is no need to reach the second portion of the preliminary injunction analysis.
 
 
 8
 Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.
 
 
 9
 Citibank N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir.1985) (internal quotations omitted). Irreparable harm "means injury for which a monetary award cannot be adequate compensation." Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979).
 
 
 10
 [I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury....
 
 
 11
 The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.
 
 
 12
 Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) (emphasis in original) (internal quotation and footnote omitted). Therefore, where monetary damages may provide adequate compensation, a preliminary injunction should not issue. See Loveridge, 788 F.2d at 918. Furthermore, the harm must be imminent or certain, not merely speculative. Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 37 (1995).
 
 
 13
 The district court's finding of irreparable harm is based upon six subordinate findings. First, the court found that Jayaraj's "interim status may be compromised by his termination leaving him vulnerable to an award of back pay less than what he might have earned." (JA 270) This finding apparently refers to the February 6, 1995 colloquy at which time the district court voiced its concern that a jury might find Jayaraj had failed to diligently mitigate damages in taking lower paying interim employment when, in fact, Jayaraj would be unable to find higher paying interim employment due to the reputational injury he had suffered as a consequence of his termination. (JA 104-111) This concern is entirely speculative and therefore fails to support the issuance of a preliminary injunction.
 
 
 14
 The district court's second subordinate finding is similarly flawed in that the court found that Jayaraj's "pension rights are not guaranteed" should he later prevail on the merits. Jayaraj offered no evidence to support the court's conclusion that full pension benefits, including an award of seniority status covering the interim between termination and a final disposition of the parties' rights, would not be available as part of a reinstatement order by the district court. Nor did Jayaraj offer any evidence whatsoever to suggest that the pension administrator would refuse to comply with such a reinstatement order. In any event, the court's concerns regarding its limited authority to issue a reinstatement order that would bind an independent pension administrator, even if valid, would not preclude an award of damages to compensate the loss of pension benefits.
 
 
 15
 Third, the district court found that the position of Personnel Director for the City involved work so unique that its interruption would, upon reinstatement, "compromise [Jayaraj's] ability to perform, in turn leaving him vulnerable to criticisms regarding the quality of his work." Deferring to the court's finding that Jayaraj's position involves unique skills, we nevertheless hold that any future injury inflicted by such criticism, if legally cognizable at all, would be compensable through damages. See Stewart v. United States I.N.S., 762 F.2d 193, 199-200 (2d Cir.1985) (reputational injury not sufficient to justify injunctive relief).
 
 
 16
 The district court's fourth finding concerns the possibility that Jayaraj's temporary absence pending trial would result in a work backlog. "A resulting backlog may, on reinstatement, require uncompensated extra work to be current." Again, deferring to the court's finding that a work backlog would result, this finding does not itself support the conclusion that irreparable harm would result. The mere fact that the Director of Personnel's work may accumulate, and that future hiring would be delayed thereby, presents no direct injury to Jayaraj, but rather an injury to the City occasioned by its own illegal employment action. As to any indirect injury visited upon Jayaraj from such a backlog, Jayaraj presented no evidence to suggest that he would not be compensated for any additional work he performed. Furthermore, any injury to Jayaraj resulting from a backlog could be compensated through a damages award.
 
 
 17
 Fifth, the district court also erred regarding the prospect that, prior to Jayaraj's reinstatement, the City might hire a replacement to fill his current position. In such an event, the court reasoned, "the [C]ity may be saddled with two directors, a factor which might weigh against reinstatement." In addition to being purely speculative, the harm posed by having two Directors of Personnel would again primarily affect the City which would be legally bound to two employees for a single position. There is no legal basis for concluding that the prospect of two Personnel Directors would weigh against Jayaraj's reinstatement.
 
 
 18
 Finally, the district court found that "[t]he level of work plaintiff achieved is sufficiently unique as to risk a significant impairment of his ability to obtain other employment." Keeping in mind the rule that irreparable harm is measured in terms of the harm arising during the interim between the request for an injunction and final disposition of the case on the merits, this finding is merely a reiteration of the district court's earlier finding that Jayaraj might have difficulty mitigating his loss of wages--a finding we rejected as overly speculative.
 
 
 19
 The law of this Circuit requires the party moving for a preliminary injunction to show that it will suffer imminent irreparable harm. Jayaraj failed to meet that burden. By accepting evidence of speculative and attenuated injuries, the district court in effect shifted the burden of proof to the non-moving party to show that under no circumstances would a later fact-finder award inadequate monetary damages. To this extent, the court departed from the well-established law of this Circuit. For these reasons, the February 9, 1995 preliminary injunction is vacated.
 
 II. Pullman Abstention
 
 20
 During oral argument of this appeal it became apparent that the merits of Jayaraj's due process claim rest upon an issue of state law, namely, whether seemingly conflicting provisions of the Waterbury City Charter and municipal regulations give Jayaraj a property interest in his employment entitling him to due process under the Fourteenth Amendment. Resolution of this question must precede a determination of whether Jayaraj, in fact, received the process he was due, and may obviate the need to address the constitutional issue. Under these circumstances, abstention under Pullman, 312 U.S. 496, 61 S.Ct. 643, is warranted. See Catlin v. Ambach, 820 F.2d 588, 589 (2d Cir.1987).
 
 
 21
 Furthermore, Connecticut has enacted a statute providing for the certification of questions of Connecticut state law by federal courts directly to the Connecticut Supreme Court. Conn.Gen.Stat. Sec. 51-199a (Supp.1995). As we have stated elsewhere, this type of certification procedure significantly diminishes equitable concerns regarding the cost and delay involved in abstention under Pullman. Griffin Hospital v. Commission on Hospitals and Health Care, 782 F.2d 24, 25-26 (2d Cir.1986).
 
 
 22
 Accordingly, we direct the district court, upon remand, to 1) certify the question of state law underlying Jayaraj's due process claim to the Connecticut Supreme Court pursuant to Conn. Gen.Stat. Sec. 51-199a; and 2) stay further proceedings before it in this matter pending resolution by the Connecticut Supreme Court of the state law issue outlined above. The order of the district court granting a preliminary injunction is vacated and the cause remanded for proceedings consistent with this opinion.