**Sam W. AIENA, et al., Plaintiffs,**

**v.**

**David A. OLSEN, et al., Defendants.**

**Burt N. Sempier, Plaintiff,**

**v.**

**David A. Olsen, et al., Defendants.**

**Nos. 98 Civ. 5549(LAK),
97 Civ. 8713(LAK).**

United States District Court,
S.D. New York.

March 10, 1999.

Michael L. Hirschfeld, Harry W. Lipman, Courtney E. Scott, Thomas E. Chase, Milbank, Tweed, Hadley & McCloy LLP, for Plaintiffs in Aiena Action.

Sarah L. Kambour, Riker, Danzig, Scherer, Hyland & Perretti LLP, for Plaintiff in Sempier Action.

Paul C. Saunders, Elizabeth L. Grayer, Cravath, Swaine & Moore, for Individual Defendants.

William P. Frank, Marco E. Schnabl, Skadden, Arps, Slate, Meagher & Flom LLP, for Johnson & Higgins, Inc.

## MEMORANDUM OPINION

KAPLAN, District Judge.

In March 1997, the shareholders of Johnson & Higgins ("J & H"), a large and well known insurance firm, sold all of their common stock to Marsh & McLennan ("Marsh"). At the same time, the plaintiffs, twenty retired J & H directors whose contracts gave them a right to share in certain of J & H's income for the ten year periods following their respective retirements, and the other similarly situated retired directors surrendered their rights, which were embodied in agreements called Ten Year Certificates. Plaintiffs then brought this action in November 1997 against individual defendants, who were principal owners of J & H at the time of the transaction, as well as Marsh. Broadly speaking, they claim that the individual defendants manipulated J & H's corporate machinery to their disadvantage by allocating an inadequate share of the proceeds of the Marsh transaction to the Ten Year Certificates and taking a disproportionate share of the benefits for themselves.

Plaintiffs now seek a preliminary injunction restraining the individual defendants from transferring Marsh stock they received in the transaction unless the shares or their proceeds are made subject to a constructive trust and first lien in favor of plaintiffs to secure payment of any judgments rendered in these actions.

### Facts

The essence of the Marsh transaction, to the extent it is relevant here, is simply stated. The selling shareholders and retired directors transferred their J & H stock to Marsh and gave up their Ten Year Certificates, respectively, for approximately $300 million in cash and Marsh stock then worth about $600 million. The share and certificate holders were required to place in an escrow account some of the Marsh shares they received in order to cover certain indemnification obligations they assumed in the deal.

All of the Marsh stock paid to the share and certificate holders was unregistered. As part of the transaction, the shareholders entered into a registration rights agreement with Marsh which provides that, at the individual election of each of the shareholders, one-third of the shareholder's Marsh stock would become freely registerable shortly after the closing (the "First Tranche"), one-third on March 27, 1998 (the "Second Tranche"), and one-third on March 27, 1999 (the "Third Tranche"). The First and Second Tranche shares already have been registered, and plaintiffs believe that the individual defendants sold all or substantially all of the Marsh shares that they were permitted to sell in those transactions. Hence, the focus of this motion is on the imminent registration and possible sale of the Third Tranche shares.

Plaintiffs evidently apprehend that the sale of the Third Tranche shares, unless the shares or their sales proceeds are restricted as prayed, would impede their ability to enforce any judgments they might obtain in these actions. They point to public filings indicating that a number of the individual defendants have sold Marsh shares they received in the acquisition either pursuant to registration statements for the First and Second Tranche shares or pursuant to Rule 144.[1] They claim also that "[i]t is generally known ... that a number of the [selling shareholders] have spent, invested or transferred to family members or trusts, a large portion of the consideration received in connection with the Marsh transaction" and that one unidentified individual defendant told an

1. Hirschfeld Aff. ¶¶ 12–17.

unidentified plaintiff that "he 'was not concerned' about this lawsuit because he had already 'given the money away ....' "[2] These claims, however, are supported only by an affidavit of counsel, who plainly has no personal knowledge of the facts.

## Discussion

■ The standard by which motions for preliminary injunctions are decided is well established. The moving party ordinarily must demonstrate that it (1) is threatened with irreparable injury absent an injunction and (2) either (a) is likely to prevail on the merits or (b) has raised serious questions going to the merits and the balance of hardships tips decidedly in its favor.[3] "Irreparable harm 'means injury for which a monetary award cannot be adequate compensation.' "[4] The threat of irreparable injury is a *sine qua non*.[5] "[I]f there is no irreparable injury, there can be no preliminary injunction."[6] And the threat of irreparable injury must be imminent or certain, not a matter of speculation.[7]

■ The parties lock horns on a series of issues including whether Rule 65 ever permits district courts to issue preliminary injunctions simply "to protect the plaintiff's right to recover monetary damages when there is a threat of insolvency or its dissipation of assets *not* directly involved in the pending litigation,"[8] whether the relief sought may be granted on the theory that the individual defendants' Marsh stock is a *res* warranting equitable protection, whether plaintiffs' ERISA and federal securities law claims justify the issuance of an injunction, and whether this motion is an improper attempt to circumvent Rule 64, which arguably is more restrictive than Rule 65 under which plaintiffs move. But it is unnecessary to explore all of the questions raised by the parties, as plaintiffs' motions fail for a series of quite simple reasons.

To begin with, there simply is no showing of irreparable injury in this case because plaintiffs have failed to establish the inadequacy of an award of damages.

Whatever else may be said concerning the Second Circuit's recent decision in *Alliance Bond Fund*,[9] in which the Supreme Court granted certiorari and upon which plaintiffs place heavy reliance, the case certainly does not permit issuance of a preliminary injunction absent a finding that "in the absence of an injunction, the movant would be unable to collect [its] judgment."[10] There is no basis for such a finding here. There is no competent or reliable evidence that any defendant is likely to transfer Marsh stock or its proceeds for less than fair consideration or to secrete or dissipate assets. There has been no showing that the defendants will be any less able to satisfy any judgment that may be entered in this case when the matter is concluded than they are today. Second-hand or third-hand rumors retailed in affidavits of counsel are no substitute for evidence, even bearing in mind the lower standards of proof applicable in preliminary injunction motions.[11]

2.  *Id.* ¶ 18.

3.  *E.g., Alliance Bond Fund v. Grupo Mexicano de DeSarrollo*, 143 F.3d 688, 696 (2d Cir.), *cert. granted,* —— U.S. ——, 119 S.Ct. 537, 142 L.Ed.2d 447 (1998).

4.  *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

5.  *Buffalo Forge Co. v. Ampco–Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir.1981).

6.  *Markowitz Jewelry Co. v. Chapal/Zenray, Inc.*, 988 F.Supp. 404, 406 (S.D.N.Y.1997).

7.  *E.g., Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995).

8.  *Alliance Bond Fund*, 143 F.3d at 693.

9.  143 F.3d 688.

10. *Id.* at 697.

11. *See, e.g., Campbell Soup Co. v. Giles*, 47 F.3d 467, 472 (1st Cir.1995); *Sierra On–Line*

Nor is there any merit to plaintiffs' attempt to bring themselves within cases such as *Republic of the Philippines v. Marcos*,[12] which have approved the use of a preliminary injunction to protect an identifiable asset that is the subject of the litigation. What plaintiffs want in this case is to be placed in the economic position they would have enjoyed had a greater portion of the acquisition consideration been allocated to them. Although the complaint makes a conclusory reference to unspecified equitable relief in addition to demanding the payment of damages, this is a case about money, not the right to possession of specific shares of Marsh stock. Marsh shares are publicly traded, and the shares available in the open market are completely fungible with those owned by the individual defendants. There is, then, no unique *res* that equity must protect from injury *pendente lite* lest the Court be stripped of its ability to render effective relief should plaintiffs prevail. Indeed, plaintiffs have admitted as much in their brief, where they concede their willingness to permit the individual defendants to sell or otherwise dispose of their Marsh shares even if they prevail on this motion as long as a constructive trust for plaintiffs' benefit is imposed on the proceeds.[13] Hence, damages are a perfectly adequate remedy, a conclusion that warrants denial of the motions.[14]

Plaintiffs' reliance on the presence of ERISA and federal securities law claims as a prop for their motions is equally unavailing, To be sure, courts have restrained the distribution of pension plan assets pending disposition of claims against the plans. But they have done so, as the individual defendants argue, because "similar to *Alliance*, ... where a defendant Plan or company is so financially unstable that allowing it to distribute assets while litigation about who is properly entitled to that distribution is pending will render the Plan unable to provide benefits to plaintiffs if they prevail ..."[15]

Finally, plaintiffs' delay in bringing on this motion is quite troublesome. The motion comes fifteen months after the filing of the action, two years after the First Tranche shares became available for transfer, and nine months after the Second Tranche shares became available for transfer. While it is unnecessary to base the decision even in part on this ground, the Court observes that delay of this sort often is a factor in denying preliminary injunctive relief and perhaps is alone sufficient to do so.[16]

### Conclusion

For the foregoing reasons, the Court finds that plaintiffs have failed to establish either any material threat of irreparable harm or that they lack adequate remedies at law. The Court has considered plaintiffs' other contentions, all of which are without merit. Accordingly, the motions for preliminary injunctions are denied. The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

---

*Inc. v. Phoenix Software Inc.*, 739 F.2d 1415, 1423 (9th Cir.1984); *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 25–26 (1st Cir.1986); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984).

**12.** 806 F.2d 344 (2d Cir.1986).

**13.** Pl. Mem. 3.

**14.** *E.g., Jayaraj v. Scappini*, 66 F.3d at 39.

**15.** Ind. Def. Mem. 13.

Plaintiffs' reliance on securities cases brought by the Securities and Exchange Commission (Pl.Mem.11–12) overlooks the fact that the Securities Exchange Act of 1934 authorizes the SEC, unlike a private litigant, to obtain a preliminary injunction without showing "risk of irreparable injury ... [or] the unavailability of remedies at law." 15 U.S.C. § 78u(d).

**16.** *See, e.g., Tom Doherty Assocs., Inc.*, 60 F.3d at 39.