BUILDING SERVICE 32B–J PENSION
FUND, et al., Plaintiffs,

v.

VANDERVEER ESTATES HOLDING,
LLC., Defendant.

No. 00 CIV. 0364(RWS).

United States District Court,
S.D. New York.

Oct. 5, 2000.

Raab, Sturm & Goldman, New York City, Regina E. Paul, of counsel, for Plaintiffs.

Ira Drogin, New York City, for Defendant.

## OPINION

SWEET, District Judge.

Building Service 32B–J Health, Pension and Annuity Funds ("Funds" or "Plaintiffs") have moved by order to show cause for a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P., foreclosing defendant Vanderveer Estates Holding, LLC ("Vanderveer" or "Defendant") from disposing of assets owed to the Funds under a prior arbitration award, for an order of attachment pursuant to Rule 64, Fed. R.Civ.P. and CPLR § 6201, or in the alternative, for Vanderveer to post a million-dollar bond. Vanderveer opposes the motion. For the reasons set forth below, the motion is denied except that a bond will be required.

### The Parties and Related Entities

Local 32B–32–J, Service Employees International Union, AFL–CIO ("Union") is a labor organization that represents members employed in the building service industry in metropolitan New York City.

The Funds are jointly administered, multi-employer, labor-management trust Funds based in New York City. The Funds are employee benefit plans that provide benefit coverage for participants employed by employers who are parties to collective bargaining agreements with the Union. The purpose of the Funds is to receive contributions from employers who are parties to collective bargaining agreements with the Union, to invest and maintain those monies, and to distribute pensions, health and insurance benefits, and annuity payments to eligible employees.

The Realty Advisory Board on Labor Relations, Inc. ("RAB") is a multi-employer organization which is a signatory to a series of collective bargaining agreements ("CBA") with the Union covering employees of apartment buildings in New York City.

Vanderveer is a for-profit domestic limited liability company based in New York City that owns several buildings in Brooklyn and employed workers covered by the RAB collective bargaining agreement.

## Prior Proceedings

In an earlier case, the Union filed suit against Vanderveer to compel payment for back contributions for the period July 5, 1998 through September 30, 1998, arising from Vanderveer's "lockout" of 51 Union employees working at an apartment complex in Brooklyn after Vanderveer purchased that property on June 5, 1998. The Honorable Louis L. Stanton of this District held that Vanderveer was bound by the RAB Agreement, under which it was required to submit disputes to arbitration. That decision was upheld by the Second Circuit, and Vanderveer submitted to arbitration.

On or about November 24, 1998, an arbitrator awarded the Union a total of $167,878.62 in back benefit contributions under the CBA as well as $181,200.57 in damages. *Bevona v. Vanderveer Estates Holding, LLC,* No. 829–I (Schecter Arb.) This award was upheld by Judge Stanton, *Bevona v. Vanderveer Estates Holding, LLC,* No. 98 Civ. 8689 (S.D.N.Y. Feb. 11, 1999), and summarily affirmed by the Second Circuit, *Bevona v. Vanderveer Estates Holding, LLC,* Nos. 98 Civ. 9529 and 99 Civ. 7049, 173 F.3d 843, 1999 WL 220151 (2d Cir. April 12, 1999).

The Funds brought the instant lawsuit on January 19, 2000 pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended ("ERISA") (29 U.S.C. §§ 1132(a)(3) and 1145) and section 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185). This action seeks to compel payment on $401,896.32 in benefit fund contributions claimed due for the period January 1, 1999 through January 1, 2000. (Compl.¶ 8).

The Funds moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on June 28, 2000. Vanderveer filed a cross-motion for summary judgment on August 4, 2000. The Funds filed a reply memorandum on August 24, 2000, at which time the motion was deemed submitted. That motion is still pending.

By order to show cause of September 14, 2000, the Funds filed the instant motion for a temporary restraining order attaching Vanderveer's assets during the pending litigation and for a preliminary injunction. Vanderveer filed a memorandum of law in opposition on September 19, 2000, and the motion was deemed fully submitted after oral argument was heard on September 20, 2000.

*Background*

Vanderveer is the owner of a number of residential apartment buildings in a complex named "Vanderveer Estates" at 3301 Foster Avenue, Brooklyn, New York. When it purchased those properties, Vanderveer assumed the prior owner's obligation to honor the terms and conditions of a collective bargaining agreement with the RAB, although Vanderveer itself is not a member of the RAB. The CBA requires that employers that are parties to it contribute funds to a group of union-sponsored employee benefit funds. Vanderveer has not made any such payments since purchasing the properties known as Vanderveer Estates.

Vanderveer's obligation to pay is the subject of the underlying action in this case. While the Funds allege that Vanderveer is a recidivist violator of its obligations to pay and seek to enjoin it from selling off any assets, Vanderveer contends that it would in fact be illegal for it to contribute to the Funds. Despite the binding obligation to pay under the CBA, Vanderveer argues, the trust agreement does not authorize receipt of contributions from Vanderveer because it is not a party. In lieu of this specific authorization, according to Vanderveer, a federal statute bars Vanderveer from paying the Funds. *See* 29 U.S.C. § 186(g). This question is the subject of the pending motion for summary judgment.

The Funds brought the instant motion for a preliminary injunction upon learning that Vanderveer "may be in the process of" selling Vanderveer Estates, which the Funds believe to be Vanderveer's sole asset, and thus sole source of money to pay the sums due. Their proposed injunction would bar Vanderveer from (1) selling or disposing of Vanderveer Estates until it pays the contributions due; (2) continuing not to pay the contributions due; (3) engaging in fraudulent conduct to hinder or delay payment of the contributions; and (4) paying any bills that do not have statutory priority over the payments owed to the Funds, except for the mortgage and taxes on Vanderveer Estates or wages and benefits to its employees.

In the alternative, the Funds propose that Vanderveer be ordered to post a one million dollar bond as security with the Clerk of Court, pursuant to the CBA.

*Discussion*

I. *Preliminary Injunction*

A. *Legal Standard*

■ In order to justify the issuance of a preliminary injunction, a movant has the burden of proving two factors: First, "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Jayaraj v. Scappini,* 66 F.3d 36, 39 (2d Cir.1995) (*citing Citibank N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985)). Second, the movant must show either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation. *See Jayaraj,* 66 F.3d at 38.

■ Irreparable harm is that injury which is so serious that "a monetary award cannot be adequate compensation." *Citibank N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985). Moreover, the specter of harm must not be "remote or speculative but actual and imminent." *Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 37 (2d Cir.1995). As the Supreme Court has emphasized, "[t]he key word in this consideration is irreparable. Mere injuries, however substantial, in

terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *see Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990).

### B. *Analysis*

#### 1. *Irreparable Harm*

■ The Funds allege that, if Vanderveer continues its failure to pay, timely contribution to the employee health, pension and annuity funds will not be made. This proposition fails to support a finding of irreparable harm for several reasons.

#### a. *The Allegedly Impending Sale of Vanderveer Estates*

First, the Funds have failed to provide any factual support for their allegation that Vanderveer is "in the process of selling" Vanderveer Estates. Without this factual foundation, the Funds' contention is merely speculative. Moreover, the Funds have not suggested any connection between the allegedly impending sale of Vanderveer Estates and Vanderveer's continuing failure to contribute to the employee trust funds. Even if the Funds could prove that the sale was imminent and that Vanderveer Estates was Vanderveer's sole asset, then, the Funds would still have failed to prove that any harm would result. The only effect of such a sale would be a continuation of the status quo, Vanderveer's failure to pay, for which, it should be noted, Vanderveer claims a legal justification.

#### b. *Continuing Failure to Pay*

Although the allegedly impending sale of Vanderveer Estates provided the "hook" for the Funds' motion for a preliminary injunction in this matter, this motion is more properly construed as an attempt to deal with Vanderveer's continuing failure

to pay a prior judgment issued by another court.

The Funds submit a portion of a Senate committee staff report as evidence that "[d]elinquencies of employers in making required contributions are a serious problem for most multiemployer plans. Failure of employers to make promised contributions in a timely fashion imposes a variety of costs on plans." Staff of Senate Comm. on Labor and Human Resources, 96th Cong., 2d Sess., S.1076, The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Consideration (Comm.Print 1980) at 43–4 (cited in *Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919, 921–23 (E.D.Mich.1981)) (internal quotations omitted). With regard to the status of the Funds in this case, however, the plaintiff alleges only that:

> It is possible that as a result of Defendant's [failure to pay], the Funds may be required to either deny employee benefits, for whom contributions have not been made ... or to provide said beneficiaries the benefits provided under the plan, notwithstanding Defendant's failure to make required contributions, thereby reducing the corpus of the Funds and endangering the rights of the employee beneficiaries on whose behalves contributions have been made....

(Plaintiff's Mem. at 5.)

Vanderveer's continuing failure to pay could support a preliminary injunction if the Funds showed that their cash reserves were so low that a cut-off of fundamental employee benefits was imminent. *See Whelan v. Colgan,* 602 F.2d 1060, 1062 (2d Cir.1979) (holding, in the context of striking workers, that "the threatened termination of medical coverage for workers and their families obviously raised the spectra of irreparable injury."). While the "threatened termination of medical coverage" for non-striking employees covered by the Funds would likely "impose costs"

on the Funds if termination were imminent, the Funds have introduced no evidence whatsoever to suggest either that medical coverage will in fact be terminated due to Vanderveer's continuing failure to pay, or, even if it would be terminated, that the termination is imminent. In fact, the Funds allege merely that "it is possible" that employee benefits "may" be denied. They concede that at this stage, the Funds still have the option of providing benefits under the plan, although that option would have the effect of reducing the corpus of the Funds.

Absent an accounting of the assets in the various funds, there is no reason to believe that any irreparable denial of benefits is imminent. Furthermore, there is no evidence that the health fund would bear the brunt of the lack of contributions. Even if it did, it is unclear that the lack of funds would cause the termination of medical care rather than causing a delay in repayment to providers of medical services.

Without this evidence, the Funds have failed to prove that any harm caused by Vanderveer's continuing failure to contribute will cause "irreparable" injury as a matter of law. Because there is no showing of irreparable harm, there is no need to proceed to a consideration of the merits of the lawsuit under the second prong of the preliminary injunction analysis.

II. *Vanderveer Must Post a $75,000 Security Bond for Court Costs and Costs of Enforcing Any Eventual Judgment Against It*

In the alternative, the Funds seek to compel Vanderveer to post a one million dollar bond as security for any judgment that might issue.

The collective bargaining agreement provides that "[a]ny Employer regularly or consistently delinquent in Health, Pension, ... and Annuity Fund payments may be required, at the option of the Trustees of the Funds, to provide the appropriate Trust Fund with a security guaranteeing prompt payment of such payments." Faul

Aff. Ex. C, Collective Bargaining Agreement Art. X(F)(1 ¶ 2) (Effective April 21, 1997 to April 20, 2000).

Attachment pursuant to Rule 64 is available as a prejudgment remedy "under the circumstances and in the manner provided by the law of the state in which the district court is held." Fed.R.Civ.P. 64. Article 62 of the New York Civil Practice Laws and Rules ("CPLR") governs attachment procedures in New York.

A party seeking a prejudgment attachment in New York must show, "by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR § 6212(a) (McKinney 1980 & Supp.1996).

In relevant part, New York's attachment statute, CPLR § 6201, authorizes courts to attach a defendant's assets:

> where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when: [...]
>
> (3) the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts....

CPLR § 6201(3). Intent to defraud must not be presumed; a plaintiff's mere allegations of fraud do not meet the standard to justify attachment under the CPLR. *See Ashland Oil, Inc. v. Gleave,* 540 F.Supp. 81 (W.D.N.Y.1982); *Eaton Factors Co. v. Double Eagle Corp.,* 17 A.D.2d 135, 232 N.Y.S.2d 901 (N.Y.App.Div.1962). As stated above, the Funds have failed to make a sufficient showing.

■ Finally, the Funds also seek an order requiring Vanderveer to post a one million dollar bond with the Court. Local Civil Rule 54.2 grants the Court discretion to "order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." The Court may consider the financial condition of the party who may be required to post the bond, the merits of the lawsuit, and the party's past compliance with court orders in deciding whether to require a bond. *See, e.g., Bressler v. Lieban,* No. 96 Civ. 9310, 1997 WL 466553, \*3 (S.D.N.Y. Aug.14, 1997); *Selletti v. Carey,* 173 F.R.D. 96, 100–01 (S.D.N.Y.1997); *Herbstein v. Bruetman,* 141 F.R.D. 246, 247 (S.D.N.Y.1992).

■ In the present circumstances, the salient factors suggesting that a bond is appropriate include the following facts: the defendant has already been held to owe hundreds of thousands of dollars in back payments; the defendant has failed to pay those sums and is currently contesting the legal decision ordering it to pay; the defense raised here is of dubious legal merit; the legal costs being incurred in this action are mounting; and the amount of back payments owed continue to rise toward one million dollars.

In light of these factors, it is hereby ordered that Vanderveer post a bond in the amount of $75,000 for court costs and costs of enforcement of any eventual judgment against it.

*Conclusion*

For the foregoing reasons, the Funds' motion for an injunction is denied, and Vanderveer is ordered to post a $75,000 bond for court costs and the costs of enforcing any eventual judgment against it.

It is so ordered.