**William J. MURRAY, Plaintiff,**

v.

**NEW YORK State, NYS Department of Correctional Services, Defendants.**

**No. 08–CV–06383L.**

United States District Court,
W.D. New York.

March 19, 2009.

tion, also became futile after June 2007.

William J. Murray, Auburn, NY, pro se.

Emil J. Bove, Jr., Office of New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

DAVID G. LARIMER, District Judge.

Plaintiff William J. Murray, appearing *pro se*, commenced this action in August 2008 against New York State and the New York State Department of Correctional Services ("DOCS"), under 42 U.S.C. § 1983. Plaintiff, who has been employed by DOCS since 1997 and is currently employed as a substance abuse counselor at Five Points Correctional Facility, alleges that he has been subjected to various forms of harassment and adverse employment actions in retaliation for plaintiff's

having reported acts of fraud by DOCS officials.

On November 17, 2008, the Court issued a Decision and Order, 585 F.Supp.2d 471, familiarity with which is assumed, in which I granted defendants' motion to dismiss the complaint on the ground that plaintiff's claims were barred by the Eleventh Amendment. The Court also granted plaintiff leave to file an amended complaint seeking prospective declaratory and injunctive relief against the relevant state officers, in their official capacities only.

Plaintiff filed an amended complaint on December 18, 2008 (Dkt. # 9), naming as defendants nineteen individuals (mostly DOCS officials and employees), all of whom are sued in their official capacities. The amended complaint seeks an order enjoining defendants from continuing their alleged retaliatory discrimination against plaintiff, as well as other injunctive and declaratory relief.

On January 7, 2009, plaintiff filed a motion for leave to file a second amended complaint, as well as for a temporary restraining order and preliminary injunctive relief. Dkt. # 11. In support of that motion, plaintiff alleged that in addition to his employment with DOCS, he was also engaged in "outside, self-employment . . . as an independent contractor" teaching courses for Keuka College ("Keuka"). Dkt. # 12 ¶¶ 4, 5. Plaintiff also alleged that on December 18, 2008—the same day that the amended complaint was filed—defendant John B. Lempke, the superintendent of Five Points, sent plaintiff a memorandum directing plaintiff to stop teaching at Keuka until plaintiff had requested, and been granted, formal permission from DOCS to engage in outside employment. *See* Dkt. # 12 at 12. Plaintiff alleged that this was a departure from DOCS's prior policies and practice, and that Lempke's action was taken in retaliation for plaintiff's filing and prosecution of this lawsuit.

Plaintiff states that he seeks to file a second amended complaint setting forth these additional allegations of retaliation.

On January 8, 2009, the Court issued an order (Dkt. # 14) temporarily enjoining defendants "from interfering with plaintiff's ability to teach courses for Keuka College or otherwise engage in outside self-employment," and setting the matter down for argument on January 21, 2009.

Defendants filed a response to the motion on January 15, 2009, in which they stated that plaintiff's request for preliminary injunctive relief was moot because DOCS had granted plaintiff permission to teach at Keuka on January 9. Dkt. # 16, # 17. At the January 21 oral argument, however, plaintiff indicated that he was still seeking preliminary relief from the Court. Plaintiff contended that under DOCS's own policies, he is not required to obtain DOCS's permission to teach at Keuka, and that he wanted the Court to issue a declaration to that effect, so that DOCS would not be able to revoke, or threaten to revoke, its "approval" of plaintiff's teaching activities.

Also on January 21, plaintiff filed a reply to defendants' papers, and he filed an additional affidavit the following day. *See* Dkt. # 18, # 19. Pursuant to the briefing schedule that had been set by the Court, Assistant Attorney General ("AAG") Emil J. Bove, Jr. filed a responding declaration on behalf of defendants on February 6, 2009. Dkt. # 23. Most recently, plaintiff filed an additional reply to AAG Bove's declaration on February 12, 2009. Dkt. # 24. The Court having reviewed all of these papers, the following constitutes my decision on plaintiff's application for preliminary injunctive relief, and on his motion for leave to file a second amended complaint.

## DISCUSSION

### I. Plaintiff's Motion for Preliminary Injunctive and Declaratory Relief

As stated, plaintiff asserts that he is not required by DOCS's policies to obtain DOCS's approval to teach at Keuka. In support of that contention, plaintiff relies upon DOCS Directive No. 2218, which governs the "procedures for employees who wish to obtain permission for outside employment." Dkt. # 16, Ex. B § I. "Outside employment" is defined as "employment by a private entity during off duty hours." *Id.* § II. The directive provides that "no employee may engage in outside employment without written approval" from DOCS. *Id.* § III(A). No such approval is required, however, for "self-employed individuals. . . ." *Id.*

Plaintiff takes the position that he is self-employed and hence not subject to the approval requirement for outside employment.[1] In addition, plaintiff claims that the matter is not moot because Keuka will not rehire him without some assurances that DOCS will not revoke its approval in the future. He therefore seeks preliminary injunctive and declaratory relief to avoid further hindrance or disruption of what he considers to be his self-employment as a teacher at Keuka or elsewhere.

■ To obtain a preliminary injunction, the moving party must demonstrate: "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the mer-its to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." *Doninger v. Niehoff,* 527 F.3d 41, 47 (2d Cir.2008). With respect to the first of these two factors, the Second Circuit has explained that to satisfy the irreparable-harm requirement, the movant must demonstrate that without a preliminary injunction, he will suffer an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 97 (2d Cir.2005) (quoting *Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 332 (2d Cir.1995)). *See also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002) (preliminary relief cannot be founded on irreparable harms that are "remote or speculative").

■ In that regard, a request for preliminary injunctive relief, even if warranted at one time, may become moot if the underlying factual circumstances have changed in the movant's favor. In other words, if, due to changed circumstances, the threatened harm dissipates, or ceases to be "actual and imminent," then injunctive relief may be denied. *See Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir.1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"); *see, e.g., Culver v. Robenson,* No. 4:07–161, 2007 WL 3119438, at *2 (D.S.C. Oct. 22, 2007) ("Claims for injunctive and declara-

---

1. Prior to the events giving rise to plaintiff's preliminary injunction motion, in September 2006, plaintiff submitted a written request to DOCS for permission to engage in outside employment. Dkt. # 12 Ex. B. Plaintiff states that even though "it likely was not necessary" for him to submit that request, he did so "[o]ut of an abundance of caution. . . ." Plaintiff's Aff. (Dkt. # 12) ¶ 4.

In the space for "name of employer" on the request form, plaintiff wrote, " 'Reality Consulting and Education' (self employment)." The request was initially denied, but, in a memo to plaintiff dated October 24, 2006, Thomas M. Poole, the then-superintendent of Five Points, stated that after reviewing plaintiff's request, Poole had "realized an error. You do not need to apply for permission to be self-employed." Dkt. # 12 Ex. C.

tory relief become moot when [the plaintiff] is no longer subjected to the condition complained of").

■ In the case at bar, I am not convinced that plaintiff has made a sufficient showing of harm that is either imminent or irreparable. With respect to the latter, "[l]oss of employment does not in and of itself constitute irreparable injury," since such harm can be remedied by money damages. *Savage v. Gorski*, 850 F.2d 64, 67 (2d Cir.1988); *see also Graphic Communications Conference v. Bakersfield Californian*, 541 F.Supp.2d 1117, 1124 (E.D.Cal.2008) ("the ... temporary loss of employment does not constitute irreparable harm"); *District Council 1707 v. New York Ass'n For New Americans, Inc.*, No. 03 Civ.9536, 2003 WL 22871926, at *3 (S.D.N.Y. Dec. 4, 2003) (loss of employment "does not ... rise to the level of 'irreparable harm' necessary for a court to grant injunctive relief") (citing *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)); *see, e.g., Jayaraj v. Scappini*, 66 F.3d 36, 38–40 (2d Cir.1995) (reversing order granting preliminary injunction in favor of municipal employee who sought to continue his job pending adjudication of the merits of his claims against city, since any injuries would be compensable through damages).

■ In addition, although plaintiff contends that he will "gain [ ] the reputation as someone who defaults on his contracts," Dkt. # 18 at 2, injuries to one's reputation are also generally not considered to be "irreparable" for purposes of deciding an injunction motion. *See Jayaraj*, 66 F.3d at 39 ("any future injury inflicted by such criticism[ of quality of plaintiff's work stemming from temporary loss of employment], if legally cognizable at all, would be compensable through damages") (citing

*Stewart v. United States I.N.S.*, 762 F.2d 193, 199–200 (2d Cir.1985) (reputational injury not sufficient to justify injunctive relief)),[2] and this injury seems speculative at best.

It is also difficult to see how any harm here could be considered "imminent," given DOCS's approval of plaintiff's request to teach courses at Keuka. Although plaintiff states, in effect, that he does not want DOCS's possible revocation of that approval hanging over him like the proverbial sword of Damocles, there appears to be no reason to believe that such a revocation is imminent or likely. Presumably DOCS is aware that it may not use the approval process under Directive 2218 as a weapon, and that revoking, or threatening to revoke that approval for retaliatory or other tactical purposes would only expose DOCS to greater liability in this § 1983 action.

Plaintiff also alleges, upon information and belief, that even though DOCS has now given him approval to teach, Keuka "will no longer offer [plaintiff] contractual opportunities without reassurance that DOCS cannot disrupt this process in the future." Dkt. # 19 ¶ 11. Plaintiff does not appear to have submitted any evidence in support of that allegation, however. At any rate, even if *Keuka* considers DOCS's written approval of plaintiff's teaching activities as unsatisfactory, that alone is not a basis for granting plaintiff relief against *DOCS*. Keuka's alleged insistence on a guarantee that DOCS cannot "disrupt" plaintiff's ability to teach may go to the issue of harm (although again such harm is not "irreparable"), but it does not demonstrate the continued existence of a live controversy as between plaintiff and DOCS with respect to plaintiff's present ability to teach at Keuka.

---

**2.** In fact, plaintiff himself focuses not just on the alleged damage to his reputation in itself, but on "the lost income [he] will suffer" as a result of that damage. Dkt. # 18 at 2.

■ The absence of irreparable harm is enough in itself to warrant denial of plaintiff's motion for preliminary injunctive relief. *See Balaklaw v. Lovell,* No. 92–CV–817, 1992 WL 310790, at *6 n. 2 (N.D.N.Y. Oct. 16, 1992) ("The preliminary injunction standard is conjunctive: the movant must prove *both* prongs of the standard in order to prevail") (citations omitted). Even if plaintiff could show irreparable harm, though, I am not persuaded that he has demonstrated a likelihood of success on the merits, or even sufficiently serious questions going to the merits to make them a fair ground for litigation.

As stated, plaintiff asserts that he falls within Directive 2218's exception for "self-employed individuals." The directive itself does not define that term, but plaintiff contends that self-employment is essentially equivalent to independent-contractor status. *See* Plaintiff's Supplemental Affidavit (Dkt. # 18) ¶ 2. Although it is not clear that those two terms are necessarily synonymous, there is some support for such an interpretation. *See, e.g., McDonald v. Southern Farm Bureau Life Ins. Co.,* 291 F.3d 718, 721 (11th Cir.2002) (referring to "independent contractors and other self-employed workers"); *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 980 (7th Cir.1996) (seeming to equate "independent contractor" with "self-employed individual").

■ In New York, "[t]he determination of whether one is an employee or an independent contractor requires examination of all aspects of the arrangement between the parties." *Araneo v. Town Bd. for Town of Clarkstown,* 55 A.D.3d 516, 518, 865 N.Y.S.2d 281 (2d Dep't 2008). "[T]he critical inquiry," however, is "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Group, Inc.,* 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 802 N.E.2d 1090 (2003). In addition, the Internal Revenue Service has developed a twenty-factor test, based on common law principles, for determining whether individuals are employees or independent contractors. *See I.R.S. Rev. Rul.* 87–41, 1987–1 C.B. 296.[3] Plaintiff asserts that he "meet[s] 17 of the 20 criteria for an independent contractor completely," and that he satisfies the other three factors "to varying degrees...." Plaintiff's Supp. Aff. (Dkt. # 18) ¶ 2.

Although plaintiff is at pains to show that he is an independent contractor vis-a-vis Keuka, his attempt fails. For one thing, it is clear that *Keuka* considers him to be an employee, and treats him as such in several significant ways.

Apparently in connection with this litigation, on December 1, 2008 DOCS Investigator James Kessel sent Keuka a written request for certain information about plaintiff's teaching activities, including whether Keuka deducted New York State taxes from plaintiff's paychecks. Dkt. # 18 at 17. In response, Sara Moravec, a human resource assistant at Keuka, stated, *inter alia,* that "William Murray, as with all of our adjunct instructors, is considered an employee of Keuka College when teaching courses for us. As an employee he has a completed New York State IT–2104 withholding form on file with us and has

---

**3.** The twenty factors are: "instructions"; "training"; "integration"; "services rendered personally"; "hiring, supervising and paying assistants"; "continuing relationship"; "set hours of work"; "full time required"; "doing work on employer's premises"; "order or sequence set"; "oral or written reports"; "payment by hour, week, month"; "payment of business and/or traveling expenses"; "furnishing of tools and materials"; "significant investment"; "realization of profit or loss"; "working for more than one firm at a time"; "making service available to general public"; "right to discharge"; and "right to terminate." *See* Rev. Rul. 87–41.

New York State taxes deducted from his paycheck." Dkt. # 18 at 18.

Similarly, in a letter to AAG Bove dated January 22, 2009, Moravec stated unequivocally that plaintiff "is considered to be and is treated as an employee of Keuka College. . . . William Murray is an Adjunct Instructor for Keuka College and all Adjunct Instructors are considered to be employee's [sic] of Keuka College." Dkt. # 23 Ex. B. She also stated that Keuka deducted income taxes and social security taxes from plaintiff's wages, that plaintiff had filed federal and state withholding forms in connection with his employment at Keuka, that Keuka paid into both the unemployment tax system and the worker's compensation fund in connection with plaintiff's employment at Keuka, and that Keuka, not plaintiff, sets the curriculum for any courses that plaintiff teaches as an adjunct instructor at Keuka. *Id.*

All of these facts indicate that plaintiff is an employee of Keuka when teaching courses for the college. Keuka's withholding and payment of employment-related taxes on plaintiff's pay is particularly notable in light of plaintiff's reliance on the IRS criteria for determining whether a worker is an employee or an independent contractor. One of the purposes of making that determination is to decide which party will be responsible for paying employment taxes on the worker's compensation. *Ware v. United States,* 67 F.3d 574, 579 (6th Cir.1995) ("Revenue Ruling 87–41 is explicitly intended to provide guidance for 'federal employment tax purposes,' i.e., whether an employer should withhold FICA taxes, or whether the worker is responsible for the same"); *see also* "Independent Contractor or Employee," IRS Pub. 1779 (explaining that "when you are an *employee*[, y]our employer must withhold income tax" and other taxes, whereas "when you are an *independent contractor*[,

y]ou are responsible for paying your own income tax and self-employment tax").

Plaintiff's filing of withholding forms, pursuant to which Keuka has withheld and paid the relevant taxes on his wages, belies plaintiff's insistence that he is not an employee of Keuka when teaching courses for the college. Thus, plaintiff's assertion that he is not covered by Directive 2218 is plainly rebutted by the evidence.

As to plaintiff's claim for preliminary declaratory relief, it is not entirely clear that such relief is *ever* available. *See Original Great Am. Choc. Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.,* 970 F.2d 273, 276 (7th Cir.1992) (noting conflicting lower court authority as to whether "there is such a creature" as a "preliminary declaratory judgment," but finding it unnecessary to decide the issue); *but see Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Auth.,* 539 F.3d 199, 215 (3d Cir.2008) (state transportation authority could seek preliminary declaratory relief to ensure compliance with Americans with Disabilities Act prior to commencing alterations of subway stations).

Assuming such relief to be available, however, its propriety in a given case should be determined according to the same standards that apply to motions for preliminary injunctive relief. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Doe,* 868 F.Supp. 532, 535–36 (S.D.N.Y. 1994) (stating that "this Court . . . has the power to issue . . . provisional equitable relief when it is necessary based on the urgency of the situation, the irreparable harm that would otherwise occur, and the remaining factors which courts consider when granting provisional injunctive relief," and that such relief "should be conditioned on the same familiar standards that the Court of Appeals has instructed should be applied to motions for preliminary in-

junctions"). For the reasons already stated, I find that such relief is not appropriate here.

## II. Plaintiff's Motion for Leave to File a Second Amended Complaint

In his notice of motion (Dkt. # 11), plaintiff states that in addition to a preliminary injunction, he also seeks leave to amend his complaint (which has already been amended once as of right). In his memorandum in support of his motion, plaintiff states that he "seeks to amend his complaint to include Lempke's conduct [concerning plaintiff's teaching at Keuka] and allege same as an yet [sic] another violation of his constitutional rights." Dkt. # 12 at 17.

Along with his motion, plaintiff also submitted what purports to be a proposed second amended complaint. Dkt. # 12–2. That document, however, is identical to the first amended complaint (Dkt. # 9), except that the proposed second amended complaint also contains three completely blank pages. *See* Dkt. # 12–2 at 4–6. Neither document contains any allegations concerning Lempke or plaintiff's teaching at Keuka. The document filed by plaintiff, then, is not in fact a proposed second amended complaint, and will not be treated as such by the Court.

■ Ordinarily, a movant's failure to submit a proposed amended complaint constitutes sufficient grounds to deny a motion to amend. *See, e.g., La Barbera v. Ferran Enterprises, Inc.,* No. CIV. A. 06–2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing party can understand the exact changes sought") (internal quotation marks omitted); *Team Air Express, Inc. v. A. Heffco Technologies, Inc.,* No.

06CV2742, 2008 WL 3165892, at *10 n. 10 (E.D.N.Y. Aug. 6, 2008) (stating that "the Court could recommend denial of the motion [for leave to amend] solely on the basis of plaintiff's failure to submit a proposed amended Complaint," but denying the motion on the merits, as futile).

■ If the movant's papers adequately explain the basis for, and nature of, the proposed amendment, however, the failure to attach a proposed amended complaint to the motion is not necessarily fatal. *Segatt v. GSI Holding Corp.,* 07 Civ. 11413, 2008 WL 4865033, at *4, 2008 U.S. Dist. LEXIS 93207, at *10 (S.D.N.Y. Nov. 3, 2008). In the case at bar, plaintiff states in his moving papers that he seeks to amend the complaint "to include Lempke's conduct" and to allege that conduct as "another violation of [plaintiff's] constitutional rights." Dkt. # 12 at 17.

Although the Court has found that plaintiff has not shown a likelihood of success on his claim that he is exempted from the requirements of Directive 2218, I am not prepared to rule, at this juncture, that as a matter of law defendants' actions in connection with plaintiff's teaching at Keuka could not at least form part of the factual basis for his retaliation claims in this action. Plaintiff contends that Lempke's directive to stop teaching at Keuka was issued in retaliation for plaintiff's prosecution of this lawsuit, which itself arises out of alleged retaliation by defendants. Even if plaintiff is covered by Directive 2218, Lempke's actions could support a § 1983 claim, if, as plaintiff alleges, they were motivated by retaliatory animus. *See Trulock v. Freeh,* 275 F.3d 391, 405–06 (4th Cir.2001) (public official may not retaliate against an individual for the exercise of a valid constitutional right, "even when the act of the public official, absent the retaliatory motive, would otherwise have been proper"), *cert. denied,* 537

U.S. 1045, 123 S.Ct. 621, 154 L.Ed.2d 517 (2002); *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir.2000) (stating that "otherwise permissible conduct can become impermissible when done for retaliatory reasons"); *Mrosek v. Kraatz,* 178 F.Supp.2d 104 (D.Conn.2001) ("the essence of a retaliation claim is that otherwise permissible conduct is rendered unlawful by the actor's retaliatory motive or intent").[4]

As the record now stands, however, plaintiff has not sufficiently shown exactly what he seeks to add to his complaint in this regard, making it impossible for the Court to determine whether the proposed amendment would be futile. To survive a motion to dismiss, any amendment would also have to be consistent with the Court's finding that plaintiff is covered by Directive 2218's requirement of DOCS approval for outside employment. *See Marchi v. Board of Coop. Educ. Servs. of Albany,* 173 F.3d 469, 477–78 (2d Cir.1999) (leave to amend may be denied where the proposed amendment would be futile); *see also Lucente v. I.B.M. Corp.,* 310 F.3d 243, 258 (2d Cir.2002) (a proposed amendment would be futile "if the proposed claim could not withstand a motion to dismiss for failure to state a claim upon which relief may be granted") (quoting *Dougherty v. North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002)).

Accordingly, plaintiff's motion for leave to amend is denied without prejudice. If plaintiff chooses to refile his motion for leave to amend, he must submit a proposed amended complaint along with the motion. Any proposed new claims or allegations must be consistent with the Court's other rulings in this Decision and

Order concerning plaintiff's motion for a preliminary injunction.

## CONCLUSION

Plaintiff's motion for a preliminary injunction and for leave to file a second amended complaint (Dkt. # 11) is denied.

IT IS SO ORDERED.

---

4. Defendants contend that Lempke's December 18 memo was issued not because of this lawsuit, but for reasons having to do with an investigation that was begun in Fall 2008, concerning whether plaintiff had been improperly using his DOCS sick leave to take time off from work, in order to teach his Keuka courses.