**BUILDING SERVICE 32B–J PENSION FUND, et al., Plaintiffs,**

v.

**VANDERVEER ESTATES HOLDING, LLC., Defendant.**

**No. 00 CIV. 0364 (RWS).**

United States District Court, S.D. New York.

Nov. 21, 2000.

Raab, Sturm & Goldman, New York City, Regina E. Paul, of counsel, for Plaintiffs.

Ira Drogin, New York City, for Defendant.

## OPINION

SWEET, District Judge.

Plaintiffs Building Service 32B–J Health, Pension and Annuity Funds (the "Funds") have moved for summary judg-

ment pursuant to Fed.R.Civ.P. 56. Defendant Vanderveer Estates Holding, LLC ("Vanderveer") has cross-moved for summary judgment. For the reasons set forth below, summary judgment is granted in favor of the plaintiffs.

### The Parties and Related Entities

Local 32B–J, Service Employees International Union, AFL–CIO ("Union") is a labor organization that represents members employed in the building service industry in metropolitan New York City.

The Funds are jointly administered, multi-employer, labor-management trust Funds based in New York City. The Funds are employee benefit plans that provide benefit coverage for participants employed by employers who are parties to collective bargaining agreements with the Union. The purpose of the Funds is to receive contributions from employers who are parties to collective bargaining agreements with the Union, to invest and maintain those monies, and to distribute pensions, health and insurance benefits, and annuity payments to eligible employees.

The Realty Advisory Board on Labor Relations, Inc. ("RAB") is a multi-employer organization which is a signatory to a series of collective bargaining agreements ("CBA") with the Union covering employees of apartment buildings in New York City.

Vanderveer is a for-profit domestic limited liability company based in New York City that owns several buildings in Brooklyn and employs workers covered by the RAB collective bargaining agreement.

### Prior Proceedings

The prior proceedings in this case are set forth in a prior opinion, *Building Service 32B–J Pension Fund v. Vanderveer Estates Holding, LLC,* 115 F.Supp.2d 459 (S.D.N.Y.2000), familiarity with which is assumed.

Briefly, this case seeks to compel payment for back contributions for the period July 5, 1998 through September 30, 1998, arising from Vanderveer's "lockout" of 51 Union employees working at an apartment complex in Brooklyn after Vanderveer purchased that property on June 5, 1998. In a previous action in this District, the Honorable Louis L. Stanton held that Vanderveer was bound by the RAB Agreement, under which it was required to submit disputes to arbitration. *See* No. 98 Civ. 4232(LLS), Order of Oct. 22, 1998. Vanderveer submitted to arbitration, and in November of 1998 was ordered to pay the Union a total of $167,878.62 in back benefit contributions under the CBA as well as $181,200.57 in damages. This award was upheld by Judge Stanton, *Bevona v. Vanderveer Estates Holding, LLC,* No. 98 Civ. 8689 (S.D.N.Y. Feb. 11, 1999), and summarily affirmed by the Second Circuit, *Bevona v. Vanderveer Estates Holding, LLC,* Nos. 98 Civ. 9529 and 99 Civ. 7048 (2d Cir. April 12, 1999).

The Funds brought the instant lawsuit on January 19, 2000 pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended ("ERISA") (29 U.S.C. §§ 1132(a)(3) and 1145) and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, seeking to compel payment on $598,263.96 in benefit fund contributions claimed due for the period January 1, 1999 through June 30, 2000, as well as liquidated damages.

The Funds moved for summary judgment on June 28, 2000. Vanderveer filed its opposition and a cross-motion for summary judgment on August 4, 2000. The Funds filed a reply memorandum on August 24, 2000, and the motion was deemed fully submitted after oral argument on September 6, 2000.

### Facts

The parties agree upon the following facts: Vanderveer is the owner of a number of residential apartment buildings in a complex named "Vanderveer Estates" at 3301 Foster Avenue, Brooklyn, New York. When it purchased those properties, Vanderveer was assigned the prior owner's

obligation to honor the terms and conditions of a 1997 collective bargaining agreement with the RAB, although Vanderveer is not itself a member of the RAB or a party to the collective bargaining agreement. The CBA was in effect through April 20, 2000, and requires that employers that are parties to it contribute funds to a group of union-sponsored employee benefit funds. Vanderveer has not made any such payments since purchasing the properties known as Vanderveer Estates.

Each of the Funds operates under its own Trust Agreement pursuant to ERISA, and all three Trust Agreements contemplate that employers will contribute pursuant to the terms of collective bargaining agreements with the Union. Vanderveer is not a signatory to the Trust Agreements. The Health Fund Trustee Agreement provides that trustees have "the power to demand, collect and receive Employer Contributions," Def. Ex. 1 ¶ 28(A), as well as to construe the terms of the Trust Agreement and the Plan, and to resolve "any disputed matter" that arises. Def. Ex. 1 ¶¶ 7(B), 15(b). The Trustees' decisions are to be "binding and conclusive upon all parties and persons." *Id.* In addition, "any owner of a member-building of the RAB ... may participate in the Fund ... whether or not any of such employees is covered by a collective bargaining agreement between such Employer and the Union." Def. Ex. 1 ¶ 6(b)(i).

The Pension Fund Trust Agreement specifically empowers its Trustees to accept and receive employer contributions, as well as to "do all acts whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of maintaining the Fund solely in the interests of the participants and beneficiaries." Def. Ex. 2 ¶¶ 6(a), 11(b).

The Annuity Fund Trust Agreement specifically contemplates that non-member employers will nonetheless be bound by collective bargaining agreements to contribute to the Fund. The Agreement pro-

vides that non-party employers who are bound by collective bargaining agreements shall become parties to the Trust Agreement by executing a written acceptance of its terms. Def. Ex. 3, Art. III § 1. However, the Trust Agreement nonetheless applies to "any Employers"—whether or not they become parties to the Trust Agreement—who are bound to contribute to the Fund pursuant to collective bargaining agreements. Def. Ex. 3, p. 1; Art. 1 § 1(c) (defining covered "Employers" as "employers who are obligated to make payment to the TRUST created by this Agreement by a Collective Bargaining Agreement with the Union...."). Trustees are empowered to "enforce the payment of contributions to the Annuity Fund by Employers" and to "receive Employer contributions," Def. Ex. 3, Art. V §§ 1(w), (x), as well as "to do all acts whether or not expressly authorized herein" in the interests of the Fund, Def. Ex. 3, Art. IX § 3. Employers are required to contribute to the Annuity Fund as per the terms of the collective bargaining agreements. Def. Ex. 3, Art. VIII §§ 1, 2.

In prior actions, Vanderveer has been found to be (1) bound by a collective bargaining agreement with the Funds; (2) under a contractual obligation to pay benefit contributions to the Funds, a multi-employer plan; and (3) in violation of the agreement for failure to contribute.

Both parties agree that, if Vanderveer is liable for back contributions, it is delinquent in the principal amount of $598,263.96 for the period January 1, 1999 to June 30, 2000. Counter–Statement of Undisputed Mat. Facts ¶ 13.

### Discussion

The Funds allege that when Vanderveer undertook the assignment from the prior owner of the buildings now known as Vanderveer Estates, it also assumed the prior owner's obligation to contribute to the Funds under the 1997 RAB Agreement, notwithstanding the fact that Vanderveer is not itself a member. Pointing to both the arbitration award and Judge Stanton's prior rulings, the Funds allege that Van-

derveer is simply a recidivist violator of its clear legal obligations to pay.

Vanderveer contends that ERISA renders unlawful any contribution Vanderveer would make, despite its obligation to pay pursuant to the CBA. ERISA provides that employee benefit funds must operate pursuant to Trust Agreements. According to Vanderveer, simply being bound by the RAB Agreement does not render it a party to any of the Trust Agreements. Since there is no express authorization in any of the Trust Agreements for the Funds to seek or accept contributions from non-members, Vanderveer argues, any such contributions would be unlawful, and therefore 29 U.S.C. § 186(g) bars the Funds from seeking contributions. In addition, Vanderveer alleges that, although courts have held that it is bound by the 1997 RAB agreement, that contract was superseded as of April 21, 2000 by a new RAB contract which Vanderveer has not adopted and to which no court has held that it is bound. In sum, Vanderveer argues not that it would be unlawful for it to make contributions, but rather that it is unlawful for the Funds to seek contributions from Vanderveer, a non-member, given the authorizing language in their Trust Agreements and ERISA.

The question presented, apparently one of first impression, is: whether employee benefit funds may lawfully seek contributions from a non-member employer whom a court has held to be bound by the RAB Agreement although the Funds' authorizing Trust Agreements do not specifically authorize the Funds to seek contributions from non-members.

## I. Summary Judgment

### A. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Because the parties agree that there is no genuine issue of material fact in this case,[1] summary judgment is appropriate. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996).

### B. Substantive Law

The parties agree on the applicable law. ERISA provides that employee benefit plans shall be established and maintained pursuant to written documents, *see* 29 U.S.C. § 1102(a)(1), which in this case are the Trust Agreements for each of the plaintiff Funds. Trustees appointed to oversee the maintenance of the trusts in which the Funds' assets are held have "exclusive authority and discretion to manage and control the assets of the plan."[2] 29 U.S.C. § 1103(a). Trustees must exercise their managerial authority "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." 29 U.S.C. § 1104(a)(1)(D).

ERISA was adopted to protect employee benefit plans from abuse by setting up national standards for their implementation and oversight. *See* 29 U.S.C. § 1001 (congressional statement of purpose); *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22 (2d Cir.1996) ("ERISA is a remedial statute enacted to protect the interests of beneficiaries of private retirement plans by reducing the risk of loss of pension benefits."). As an exception to the general rule disallowing employer payments to employee representatives or labor organizations, 29 U.S.C. § 186(a),

---

1. Although Vanderveer had objections to plaintiffs' Rule 56.1 Statement of Undisputed Facts, these objections were either to immaterial facts or on the basis that the statement in question was an issue of law to be decided by the Court.

2. That is, unless the benefit plan expressly provides otherwise or the authority is delegated to other managers, *see* 29 U.S.C. § 1103(a)(1),(2).

section 302(c)(5)(B) of the LMRA allows employers to make payments to employee benefit funds held in trust provided that the basis for the payments is detailed in a written agreement. 29 U.S.C. § 186(c)(5)(A), (B). Section § 186(g) provides that this exception, even if otherwise lawful, does not apply to contributions to trust funds that were established prior to 1946.

Finally, ERISA requires that employers who are "obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of ,such plan or agreement." 29 U.S.C. § 1145.

### C. *Analysis*

Whether the Funds may lawfully seek contributions depends on two factors: (1) whether the agreement to which Vanderveer is bound satisfies the requirement in LMRA § 302(c)(5)(B) that employers may contribute to employee trust funds only as long as the basis for those contributions is set forth in a "written agreement," although Vanderveer never signed this agreement; and if so, (2) whether the Trust Agreements authorize the Funds to collect contributions from non-member employers.

### 1. *Written Agreement*

The Second Circuit has interpreted the written agreement requirement of LMRA § 302(c)(5)(B) in two recent opinions. Both parties cite *Moglia v. Geoghegan*, in which the Court held that an employer's contributions to an employee trust fund would violate ERISA where the employer had not signed either the collective bargaining agreement or the trust fund agreement, and had shown no intention to be bound by those instruments. 403 F.2d 110, 118 (2d Cir.1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969).

In 1999, however, the Second Circuit revisited *Moglia* in the context of an employer which had been a party to a previous collective bargaining agreement but had not signed two subsequent CBA's. *See Brown v. C. Volante Corp.*, 194 F.3d 351 (2d Cir.1999). In *Brown*, the Court held that "an unsigned, written agreement satisfies Section 302(c)(5)(B)'s 'written agreement' requirement." *Id.*, 194 F.3d at 355. Unlike the employer in *Moglia*, the employer in *Brown* had continued to contribute to the Funds pursuant to its previous practice despite not having signed two subsequent CBA's, which the Court held manifested an intent to be bound by the unsigned CBA's. *Id.*, 194 F.3d at 355 & n. 1.

■ In this case, there is a written Trust Agreement—1997 RAB Agreement signed by Vanderveer's predecessor. Because a court has found that this agreement validly binds Vanderveer as an assignee, *see Bevona v. Vanderveer Estates Holding, LLC*, No. 98 Civ. 8689 (S.D.N.Y. Feb. 11, 1999), *aff'd, Bevona v. Vanderveer Estates Holding, LLC*, Nos. 98 Civ. 9529 and 99 Civ. 7048 (2d Cir. April 12, 1999), this Court need not inquire into Vanderveer's intent to be bound by the Agreement. The written agreement that was in effect when Vanderveer purchased the property, although unsigned, fulfills the requirement of § 302(c)(5)(B) with regard to all contributions due from Vanderveer while it was obligated to pay under that Agreement, from June 5, 1998, the date Vanderveer purchased Vanderveer Estates, until the Agreement expired on April 20, 2000. For this period, the question therefore becomes whether the Trust Agreements authorize the Funds to seek contribution from non-members such as Vanderveer.

■ However, the terms of the 1997 Agreement provided that it would remain in effect until its successor was executed, and a new RAB Agreement was executed on April 21, 2000 (the "2000 Agreement"). Pltf. Stmt. of Undisp. Mat. Facts ¶¶ 4, 12.

Because the 1997 Agreement was no longer in effect as of April 21, 2000, Vanderveer's obligation as an assignee of the 1997 Agreement also ceased on that date. Vanderveer did not sign the 2000 Agreement and argues it had no intent to be bound by it. Both parties agree that Vanderveer has done nothing to indicate any interest in adopting the 2000 Agreement, and has neither made any contributions to the Fund nor expressed any willingness to assume such an obligation. *See Moglia,* 403 F.2d at 118. Therefore, Vanderveer is not bound by the 2000 Agreement and so is not responsible for back contributions accruing after April 20, 2000, even if the Trust Agreements authorize the Funds to seek such contributions.

### 2. *The Trust Agreements Authorize the Funds to Seek Contributions from Non–Members Who Are Bound By the RAB Agreement*

The Agreements governing each Fund contemplate that non-member employers will be bound to make contributions and grants the Trustees significant authority in effectuating all such contributions. Each agreement authorizes the Trustees to seek and receive contributions from both member-employers, who have signed CBA's and the Trust Agreements, as well as from "other employers ... [who] hereafter will execute, collective bargaining agreements...." Def. Ex. 1 at 1 ¶ 2 (Health Fund); Ex. 2 at 1 ¶ 2 (Pension Fund); *see also* Def. Ex. 3 at 1 ¶ 3 (Annuity Fund) (the Union ... will hereafter execute, collective bargaining agreements with other Employers, who are not members of said Employer Groups, who are likewise bound to make similar payments to the Trust Fund ....).

Although the Agreements make reference to contributions from non-member employers who will execute collective bargaining agreements, there is no indication from the Agreements that the Trustees are in any way limited from receiving contributions from non-member employers who have not executed such agreements but who are nonetheless bound by them. The Health Fund Trustee Agreement provides that "any owner of a member-building of the RAB ... may participate in the Fund ... whether or not any of such employees is covered by a collective bargaining agreement between such Employer and the Union." Def. Ex. 1 ¶ 6(b)(i). The Pension Fund Trust Agreement applies to "any Employers"—whether or not they become parties to the Trust Agreement—who are bound to contribute to the Fund pursuant to collective bargaining agreements. Def. Ex. 3, p. 1; Art. 1 § 1(c). The Annuity Fund Trust Agreement applies to any employer, whether member or non-member, who is "obligated to make payment to the trust created by this Agreement by a Collective Bargaining Agreement with the Union". Def. Ex. 3, Art. I § 1(c).

Finally, each of the Agreements grants the Trustees broad discretion in construing the language of the Agreements and in conducting additional, unenumerated acts in the interests of the Funds. *See* Def Ex. 1 ¶ 19(B) (Health Fund) (authorizing Trustees to "take such other and further action not inconsistent with the terms hereof or with ERISA to carry out the provisions and purpose of this Agreement ...."); "Def. Ex. 2 ¶¶ 6(a), 11(b)(Pension Fund) (empowering Trustees to 'do all acts whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objectives of maintaining the Fund solely in the interests of the participants and beneficiaries.' "); Def. Ex. 3, Art. IX § 3 (Annuity Fund) (empowering Trustees "to do all acts whether or not expressly authorized herein" in the interests of the Fund).

■ Therefore, both the language specifically contemplating contributions from non-members and the broad discretion granted to Trustees in each Agreement authorize the Trustees to seek and receive contributions from entities such as Vanderveer which are non-members who are

obligated to contribute pursuant to the RAB Agreement.

In light of the foregoing, the plaintiffs' motion for summary judgment will be granted as to the contributions due through April 20, 2000 and denied as to those contributions claimed due thereafter.

### 3. *Contributions, Interest, Liquidated Damages, Fees and Costs will be Assessed*

Section 502(g)(2) of ERISA provides that:

In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the Court shall award the plan:

(A) The unpaid contributions;

(B) Interest on the unpaid contributions;

(C) An amount equal to the greater of:

(i) interest on the unpaid contributions; or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) Reasonable attorney's fees and costs of the action, to be paid by the defendant; and

(E) Such other legal or equitable relief as the court deems appropriate. For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan or, if none, the rate prescribed under Section 6621 of the Internal Revenue Code.

29 U.S.C. § 1132(g)(2). The penalties for failure to contribute as set forth in this section are mandatory. *See Iron Workers District Council of Western New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.,* 68 F.3d 1502, 1506 (2d Cir.1995).

Judgment will issue against Vanderveer in the amount of those contributions due through April 20, 2000. In addition, because the Agreements themselves do not specify interest rates, interest will be assessed at the statutory rate of 6% from the date payments became due. *See Mason Tenders District Council Welfare Fund v. Mackroyce Constr. Corp.,* No. 96 Civ. 4693, 1998 WL 193075, at *2 (S.D.N.Y. Apr.22, 1998).

■ Next, plaintiffs will be awarded a penalty in the amount of either the interest on unpaid contributions or liquidated damages provided for in the Agreements, up to 20%. 29 U.S.C. § 1132(g)(2)(C). The Trust Agreements provide for monthly liquidated damages in the amount of 2½%— 30% of the claimed delinquency yearly— for any contributions received more than 50 days after they become due. *See* Def. Ex. 1 ¶ 29(B); Def. Ex. 2 ¶ 3; Def. Ex. 3, Art. VIII § 2. Therefore, because the Trust Agreement figure exceeds ERISA's 20% limit, and because the ERISA limit is greater than the statutory interest rate of 6%, liquidated damages in the amount of 20% of the delinquent contributions will be assessed pursuant to 29 U.S.C. § 1132(g)(2)(C).

Vanderveer submits that a lower percentage of liquidated damages should be imposed due to the fact that the principal due vastly exceeds actual claims paid, so that imposing 20% liquidated damages would amount to an additional windfall to the plaintiff Funds. Def. Br. at 6–7. Vanderveer cites *Agathos v. Starlite Motel,* 977 F.2d 1500 (3d Cir.1992), in support of its contention that liquidated damages should be reduced in proportion to actual claims paid. However, the *Agathos* court considered the amount of claims paid as a means of determining whether or not the employer was required to make back con-

tributions, not in calculating the appropriate amount of liquidated damages due for failing to make the required contributions. *See* 977 F.2d at 1506–07. ERISA provides that courts finding in favor of plaintiffs must either award liquidated damages or double the interest, whichever is greater. 29 U.S.C. § 1132(g)(2)(C). Although the Court has discretion to award liquidated damages at a rate lower than 20%, doing so would not advance Congressional intent in passing § 1132(g)(2)(C), namely "that the enforcement provisions should have teeth: the provisions should be liberally construed to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act." *Iron Workers,* 68 F.3d at 1506 (*citing Laborers Fringe Benefit Funds—Detroit & Vicinity v. Northwest Concrete & Constr., Inc.,* 640 F.2d 1350, 1352 (6th Cir.1981)) (internal quotations omitted). Given that Vanderveer has persisted in failing to make back contributions despite a final court holding that it is obligated to do so, liquidated damages comprising 20% of the delinquent contributions is reasonable.

■ Finally, because summary judgment has been granted in its favor, plaintiffs are entitled to an award of reasonable attorneys' fees and costs. Although the amount of any such award rests within the Court's discretion, the award itself is mandatory. *See* ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D); *Iron Workers,* 68 F.3d at 1506. In suits to recover delinquent employee benefit plan contributions, the amount of reasonable attorneys' fees to be awarded is determined by a lodestar analysis, *see Mason Tenders* at *2, which is the number of hours reasonably expended multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

As the parties have agreed upon only the total amount due through July 1, 2000 and the delinquency status sheet does not delineate between funds due under the 1997 RAB Agreement and the 2000 Agreement, the Court does not have the information necessary to compute the amount of contributions, interest, or damages due. Moreover, the plaintiffs have submitted no calculation of reasonable attorney fees and costs. Plaintiffs are directed to settle a judgment within twenty days of this opinion and to include with the proposed judgment an affidavit setting forth (1) the contributions due through April 20, 2000; (2) 6% interest; (3) 20% liquidated damages on unpaid contributions from the date the contributions first became due; and (4) calculations of reasonable attorneys' fees and costs of this litigation. The affidavit should compute interest and liquidated damages through the date of settlement of the judgment. Defendant shall file with the Court an affidavit setting forth any disputes with regard to plaintiffs' calculation at least five days prior to the settlement date.

### Conclusion

For the aforementioned reasons, plaintiffs' motion for summary judgment is granted. Settle judgment on notice.

It is so ordered.