**BUILDING SERVICE 32B–J PENSION FUND, et al., Plaintiffs,**

v.

**VANDERVEER ESTATES HOLDING, LLC., Defendant.**

**No. 00 CIV. 0364(RWS).**

United States District Court, S.D. New York.

Jan. 17, 2001.

---

**42.**  *Metallgesellschaft A.G.*, 790 F.2d at 282.

Raab, Sturm & Goldman, New York (Regina E. Paul, of Counsel), for Plaintiffs.

Ira Drogin, New York City, for Defendant.

*OPINION*

SWEET, District Judge.

Plaintiff Building Service 32B–J Health, Pension and Annuity Funds (the "Funds") have moved for reconsideration and reargument pursuant to Local Rule 6.3, or to alter or amend this Court's November 21, 2000 opinion and order, pursuant to Rules 52(b), 59(e) or 60(b), Fed.R.Civ.P., to the extent that it held that defendant Vanderveer Estates Holding, LLC ("Vanderveer") was not liable for contributions to the Funds after April 20, 2000. Vanderveer opposes the motion.

Also pending are the Funds' motion to hold Vanderveer in contempt for failing to file a $75,000 bond in compliance with this Court's October 5, 2000 opinion, and the parties' proposed judgments.

For the reasons set forth below, both the motion to reconsider and the contempt motion are granted. Judgment shall issue in accordance with this opinion.

### The Parties and Related Entities

Local 32B–J, Service Employees International Union, AFL–CIO ("Union") is a labor organization that represents members employed in the building service industry in metropolitan New York City.

The Funds are jointly administered, multi-employer, labor-management trust Funds based in New York City. The Funds are employee benefit plans that provide benefit coverage for participants employed by employers who are parties to collective bargaining agreements with the Union. The purpose of the Funds is to receive contributions from employers who are parties to collective bargaining agreements with the Union, to invest and maintain those monies, and to distribute pensions, health and insurance benefits, and annuity payments to eligible employees.

The Realty Advisory Board on Labor Relations, Inc. ("RAB") is a multi-employer organization which is a signatory to a series of collective bargaining agreements ("CBA") with the Union covering employ-

ees of apartment buildings in New York City.

Vanderveer is a for-profit domestic limited liability company based in New York City that owns several buildings in Brooklyn and employs workers covered by the RAB collective bargaining agreement.

### Prior Proceedings

The prior proceedings in this case are set forth in two opinions of this Court, familiarity with which is assumed. *See Building Service 32B–J Health Funds v. Vanderveer Estates Holding, LLC*, 121 F.Supp.2d 750 (S.D.N.Y.2000); ("*Vanderveer II* "); *Building Service 32B–J Pension Fund v. Vanderveer Estates Holding, LLC*, 115 F.Supp.2d 459 (S.D.N.Y.2000) ("*Vanderveer I* ").

On November 20, 2000, one day before *Vanderveer II* was issued, the Funds moved to hold Vanderveer in contempt of *Vanderveer I*, which, although denying the Funds' motion for a preliminary injunction, had ordered Vanderveer to file a $75,000 bond. 115 F.Supp.2d at 464. Vanderveer filed the $75,000 bond on December 13, 2000, and filed its opposition to the contempt motion three days later. The Funds filed a reply on December 19, 2000, and the motion was deemed fully submitted on December 27, 2000.

Meanwhile, the Court issued its opinion on the Funds' motion for summary judgment in *Vanderveer II*, holding that although Vanderveer was not a signatory to the 1997 RAB Agreement, it was an assignee of a signatory, and was therefore bound to contribute to the Funds. *Vanderveer II*, 121 F.Supp.2d at 756–57. Vanderveer was found liable for back contributions plus interest from the date it purchased the covered properties to April 20, 2000, when the collective bargaining contract to which it was an assignee expired, in addition to statutory liquidated damages, attorneys' fees and costs. *Id.*, 121 F.Supp.2d at 758. The parties were invited to submit documentation calculating these amounts in support of their proposed judgments in accordance with the opinion, *id.*, which they did, from December 7, 2000 through December 15, 2000.

However, the Court abstained from entering a judgment in accordance with *Vanderveer II* because the Funds filed the instant motion on December 1, 2000, seeking reconsideration of one aspect of that opinion. Specifically, the Funds take issue with the holding that Vanderveer was not obligated to contribute to the Funds after April 20, 2000, when a new agreement was entered (to which Vanderveer was neither a party nor an assignee) that abrogated the prior contract. Vanderveer opposed the motion in a December 26, 2000 filing, and the motion was deemed fully submitted on December 27, 2000.

### Discussion

### I. The Motion to Alter, Modify or Reconsider a Summary Judgment Decision is Granted

### A. Authority to Reconsider

■ This Court has the discretion to reconsider Vanderveer's obligation to contribute after April 20, 2000 pursuant to Local Civil Rule 6.3, or to alter or amend the prior opinion pursuant to Federal Rules of Civil Procedure Rule 59(e), upon motion filed within ten days of the entry of the opinion. Under either rule, the burden is on the moving party to demonstrate that the Court overlooked controlling decisions or material facts that were before the Court on the original motion and might "materially have influenced its earlier decision." *Anglo American Ins. Co. v. CalFed, Inc.*, 940 F.Supp. 554, 557 (S.D.N.Y.1996).

■ Local Rule 6.3 must be narrowly construed and strictly applied so as to avoid duplicative rulings on previously considered issues, and may not be employed as a substitute for appealing a final judgment. *See Shamis v. Ambassador Factors*, 187 F.R.D. 148, 150 (S.D.N.Y.1999). Therefore, a party moving for reargument "may not advance new facts, issues or

arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 1989 WL 162315, at * 3 (S.D.N.Y.1989).

■ Nor is Rule 59(e) a vehicle by which a party may introduce new facts or arguments not previously raised. *See Katz v. Berisford International PLC*, No. 96 CIV. 8695(JGK), 2000 WL 1760965, *5 (S.D.N.Y. Nov.30, 2000). Alteration or amendment of a prior decision pursuant to Rule 59(e) is appropriate "only where controlling law has changed, new evidence is available, and/or clear error must be corrected or manifest injustice prevented." *Cavallo v. Utica–Watertown Health Ins. Co.*, 3 F.Supp.2d 223, 225 (N.D.N.Y.1998).

If the Court proceeds to the merits of this motion to reconsider, it must decide whether there is a genuine issue of material fact such that neither party is entitled to summary judgment as a matter of law with respect to contributions owed after April 20, 2000. *See* Rule 56(c), Fed.R.Civ.P.

### B. *Proffered Grounds for Reconsideration, Alteration Or Amendment*

*Vanderveer II* held in relevant part that Vanderveer's obligation to contribute pursuant to its status as an assignee of the 1997 Agreement terminated on April 21, 2000, when the 2000 Agreement went into effect. Although properly agreeing that Vanderveer is not bound by the 2000 Agreement,[1] the Funds assert that the 1997 Agreement remained in effect pursuant to its "Evergreen Clause," which they argue compelled Vanderveer to continue to make contributions notwithstanding the execution of another agreement.

The relevant facts pertaining to this motion lie in Articles XVII and XVIII of the 1997 RAB Agreement, which was submitted to the Court in support of the summary judgment motion. Article XVII provided that the 1997 Agreement remained in effect until "a successor Agreement" was executed. (Pltf. Mem. Ex. B (Pltf.Amd.Stmt.) ¶ 12.) However, Article XVIII provided that:

> Upon the expiration date of this agreement, the same shall continue in full force and effect for an extended period until a successor agreement has been executed. During the extended period, all terms and conditions shall be in effect and the parties shall negotiate for a successor agreement retroactive to the expiration date... In the event that the parties are unable to agree upon the terms of a successor agreement, either party upon ten (10) days' written notice to the other party may cancel this agreement.

("The Evergreen Clause".) (Faul Summ. Judg. Aff. Ex. C at 89.)

The Funds contend that the Court (1) overlooked the 1997 Agreement's Evergreen Clause, which the Funds contend ensured that the 1997 Agreement remained in force until certain conditions precedent were met, including (a) the signing of a "successor agreement;" or (b) unsuccessful negotiation by the parties followed by ten days notice of cancellation; and (2) erroneously equated a "successor" Agreement with a contract that "superseded" the prior Agreement. The Funds argue that the 2000 Agreement did not function as a "successor" agreement terminating the prior agreement with respect to Vanderveer because Vanderveer was not a party thereto. Therefore, the Funds contend, the 1997 Agreement re-

---

1. Vanderveer is not bound by the 2000 Agreement because it is neither a party nor an assignee thereof and manifested no intent to be bound thereby. *See* 289 U.S.C. § 186(c)(5)(B) (requiring written agreement governing contributions); *Moglia v. Geoghegan*, 403 F.2d 110, 118 (2d Cir.1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969) (employer who fails to sign agreement and evinces no intent to be bound is not required to make contributions); *cf. Brown v. C. Volante Corp.*, 194 F.3d 351 (2d Cir.1999) (party to prior written agreement is bound to unsigned successor agreement when it manifests an intention to remain bound thereto). As such, Vanderveer may not be compelled to make payments pursuant to that contract.

mains in effect as to Vanderveer pursuant to the Evergreen Clause because, as Vanderveer concedes, it did not file a cancellation notice.[2]

In response, Vanderveer first argues that this is an improper new argument premised upon facts previously submitted to the Court. On the merits, Vanderveer contends that the 2000 Agreement (1) was a successor agreement that terminated Vanderveer's obligations pursuant to Article XVII of the 1997 Agreement; and that (2) even if the 2000 Agreement was not a "successor" agreement, Vanderveer's obligation to contribute ended when the 1997 Agreement expired on April 20, 1997, because the Evergreen Clause applies only to "parties" to the 1997 Agreement, and not to non-parties who are nonetheless bound to it, such as Vanderveer.

### C. Analysis

Although *Vanderveer II* took note of the fact that Vanderveer was not a party to the 2000 Agreement, it failed to address the legal effect of that fact on Vanderveer's obligations under the 1997 Agreement. In other words, the prior opinion did not consider whether, with respect to Vanderveer, the 2000 Agreement was a "successor" agreement that had the effect of terminating obligations under the 1997 Agreement, in light of the fact that Vanderveer was not a party to the new agreement. Therefore, to avoid manifest injustice, the Court will address the merits of the Funds' claim pursuant to Rule 59(e).

### 1. Termination of the 1997 Agreement

The 1997 Agreement provides that obligations thereunder may be terminated in one of two ways: (1) by the execution of a "successor agreement,"[3] Art. XVII; or (2) by sending ten days cancellation notice after negotiations fail to produce a successor agreement, Art. XVIII.

### a. The 2000 Agreement Did Not Terminate Vanderveer's Obligations Pursuant to the 1997 Agreement

Like any contract, a "successor agreement" does not bind entities who are not signatory parties or assignees thereof. *See, e.g., Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir.1985) (finding a non-signatory to a contract not bound by a contract where the party who signed the contract was not the non-signatory's agent); *Crabtree v. Tristar Automotive Group, Inc.*, 776 F.Supp. 155, 166 (S.D.N.Y.1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract."). The parties agree that Vanderveer is neither a party to nor an assignee of the 2000 Agreement, and is therefore not bound to it.

Therefore, the first method of terminating Vanderveer's obligations to contribute under the 1997 Agreement was not activated.

### b. The Evergreen Clause Applies to Vanderveer, and Remains in Force

As the Funds note, the Evergreen Clause is a common and lawful provision in collective bargaining agreements. Such provisions foster the goals of the labor laws by preserving employee benefits after the expiration of a collective bargaining agreement while facilitating good faith negotiations toward a new agreement. *See Laborers Health and Welfare Trust Fund For Northern California v. Advanced*

---

**2.** Somewhat anomalously after advancing this argument, the Funds contend that an arbitrator, not the Court, is responsible for construing the language of the Evergreen Clause. Yet the Funds failed to bring this issue to the attention of the arbitrator in prior proceedings and instead raised it here.

**3.** "Successor" is defined as "one that succeeds or follows, one who takes the place that another has left and sustains the like part or character, one who takes the place of another by succession." 5 Black's Law Dictionary 1289 (West 1979).

*Lightweight Concrete Co., Inc.*, 484 U.S. 539, 544 n. 6, 108 S.Ct. 830, 833 n. 6, 98 L.Ed.2d 936 (1988) ("Freezing the status quo ante after a collective agreement has expired promotes industrial peace by fostering a non-coercive atmosphere that is conducive to serious negotiations on a new contract. Thus, an employer's failure to honor the terms and conditions of an expired collective-bargaining agreement pending negotiations on a new agreement constitutes bad faith bargaining in breach of sections 8(a)(1), 8(a)(5) and 8(d) of the National Labor Relations Act ....") (*citing NLRB v. Katz*, 369 U.S. 736, 743 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962)).

However, Vanderveer alleges that, as a non-party, it is not bound by the Evergreen Clause, because that provision refers only to "parties." This contention is false, both according to the language of the Evergreen Clause, and under the Honorable Louis L. Stanton's prior ruling, *Bevona v. Vanderveer Estates Holding, LLC*, No. 98 Civ. 8689 (S.D.N.Y. Feb. 11, 1999), *aff'd, Bevona v. Vanderveer Estates Holding, LLC*, Nos. 98 Civ. 9529 and 99 Civ. 7049, 1999 WL 220151 (2d Cir. April 12, 1999) (table).

■ First, the true "Evergreen Clause" is one sentence of Article XVIII providing that the 1997 Agreement "shall remain in force and effect until a successor agreement has been executed." (Faul Sum. Judg. Aff. Ex. C, Art. XVIII at 89.) The fact that Vanderveer is not technically a "party" to the Agreement has no bearing on the plain meaning of this contractual provision. *See Krumme v. Westpoint Stevens Inc.*, Nos. 99–9442, 99–9464, 2000 WL 1920451, *5 (2d Cir. Dec.28, 2000) (recognizing that plain meaning is appropriate construction of unambiguous contractual language). Judge Stanton found in *Bevona* that when Vanderveer undertook the acceptance and assignment from the former owner of the buildings employing union employees, it became bound to the 1997 Agreement. As such, the Evergreen Clause also binds Vanderveer. By

implication, Vanderveer must negotiate and execute a new agreement in order to terminate its obligations under the 1997 Agreement pursuant to the Evergreen Clause. As it has failed to do so, its contractual duty to contribute to the Funds continues after April 20, 2000 unless it filed a notice of cancellation.

Vanderveer contends that the later provisions requiring "the parties" to negotiate a successor agreement and to provide written notice of cancellation do not apply to it. As the parties recognize, neither the 1997 nor the 2000 Agreement was drafted in contemplation that entities that were not members of the RAB, and not signing parties to the Agreements, would nonetheless be bound to them under circumstances such as those presented here. Because Vanderveer is bound to the Agreement, it is reasonable to construe these provisions as applying to Vanderveer. To hold otherwise would be to create an anomaly whereby Vanderveer might have no mechanism by which to renegotiate the terms of the Agreement or to terminate it if such negotiations were unsuccessful. Such a reading would conflict with the National Labor Relations Act, which requires employers to negotiate in good faith with representatives of its employees. *See* 29 U.S.C. §§ 158(a)(5) ("It shall be an unfair labor practice for an employer ... to refuse to bargain collectively with the representatives of his employees...."); § 158(d) (describing obligation to bargain collectively in good faith).

Thus, because Vanderveer has not executed a successor agreement, Vanderveer's obligations to contribute pursuant to the 1997 Agreement terminated only if it filed ten days cancellation notice after unproductive negotiations on a new contract. There is no evidence in the record of negotiations. However, the parties agree that Vanderveer has not filed any cancellation notice. Therefore, at least one of the conditions precedent to terminating Vanderveer's obligations under the 1997 Agreement has not been met. As a

result, Vanderveer remains bound after April 20, 2000 to contribute to the Plaintiff Funds pursuant to the Evergreen Clause.

## II. *The Contempt Motion*

Next, the Funds move to hold Vanderveer and its sole principal, Abraham Weider ("Weider"), in contempt of this Court's October 5, 2000 order, which required Vanderveer to post a $75,000 bond for court costs and the costs of enforcing any eventual judgment against it. In addition to the contempt finding, the Funds request that the bond be posted, that Vanderveer be required to pay costs and attorneys' fees incurred on this motion, a daily fine for each day bond was not posted, and that Weider be taken into custody until the bond is posted.

Vanderveer argues that neither it nor Weider should be held in contempt, because a $75,000 bond was filed on the return date for this motion, December 13, 2000, and the Funds have suffered no prejudice.

In light of the fact that the bond has been filed, the remaining issues to be resolved include only whether Weider and Vanderveer should be held in contempt, and whether costs and attorneys' fees should be assessed.

■ The inherent power of the courts to enforce lawful orders by means of civil contempt is based upon the highest authority. *See Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Contempt is intended to serve two purposes: to ensure a party's future compliance with court orders, and to compensate victims of contempt for harms sustained as a result thereof. *See Weitzman v. Stein,* 98 F.3d 717, 718 (2d Cir.1996); *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1062 (2d Cir.1995). "A party may be held in contempt only if it is proven by clear and convincing evidence that the party violated a clear and unambiguous order of the court." *City of New York v. Local 28, Sheet Metal Workers'*

*Int'l Ass'n,* 170 F.3d 279, 282–83 (2d Cir. 1999).

■ The order of October 5, 2000 clearly required Vanderveer to post a $75,000 bond, but set no deadline. As such, a finding of contempt is appropriate if the Funds show by clear and convincing evidence that Vanderveer did not diligently attempt to comply with the order in a reasonably timely manner. *See Weitzman,* 98 F.3d at 718; *King,* 65 F.3d at 1058. The purpose of the bond was, as the prior order noted, to ensure compliance with any eventual award assessed against the defendant. As the bond was filed by the return date on the motion and before judgment was issued, the two-month delay in filing the bond did not prejudice the Funds's ability to collect any eventual award.

However, the Funds further argue that Vanderveer's willful failure to post the bond in a timely manner harmed them by forcing them to incur attorneys' fees to prosecute this motion. The Second Circuit has not yet addressed the question whether attorneys' fees may be awarded absent a finding of willful contempt. *See Jaeger v. Massis,* No. 00–7390, 2000 WL 1678778, *2 (2d Cir. Nov.3, 2000) (table) ("Whether willfulness is requisite for an award of attorneys' fees appears to be an open question in this Circuit") (*citing Weitzman,* 98 F.3d 717, 719 n. 1).

■ This question does not affect the outcome of this motion, because the Funds have set forth sufficient facts to show that Vanderveer's delay in filing the bond was a willful violation of the October 5 order. The fact that the bond was filed on the return date of the contempt motion suggests more than coincidence, and strongly indicates that the motion itself was the sole reason for compliance with the prior order. Vanderveer argues that the filing of the bond was "frustrating," and was delayed only as a result of the bondsman's lack of experience with this particular form of bond and an initial error in drafting.

Yet Vanderveer did not obtain the initial, erroneous bond until two days before the motion was due, on December 11, 2000. (Def.Mem.Ex. A.) Considering these facts in the context of Vanderveer's Sisyphean efforts to avoid paying debts owed to the Funds in this and related litigation, Vanderveer's failure to comply with the October 5, 2000 order until December 13, 2000 was a result of willful contempt. The Funds shall be reimbursed for costs and attorneys' fees associated with this motion. *See New York State Nat. Organization for Women v. Terry,* 159 F.3d 86, 96 (2d Cir. 1998) ("A finding that a contemnor's misconduct was willful strongly supports granting attorney's fees and costs to the party prosecuting the contempt.").

As Weider is not a named party in this action, his failure to take action pursuant to the October 5, 2000 order, even if willful, was not in violation of this Court's order, and the contempt motion is denied as to him.

### Conclusion

For the foregoing reasons, the Funds' motion for a finding that Vanderveer continues to be bound to the 1997 Agreement after April 20, 2000 is granted. In addition, Vanderveer is in contempt of this Court's October 5, 2000 order and shall pay the Funds' costs and attorneys' fees associated with prosecuting the contempt motion. Submit accounting of fees on notice within twenty days of the filing of this opinion.

It is so ordered.