**In re: STOCK EXCHANGES OP-TIONS TRADING ANTITRUST LITIGATION**

**Nos. MDL 1283, M–21–79 RCC, 99 CIV 962 RCC.**

United States District Court, S.D. New York.

April 24, 2001.

---

## OPINION AND ORDER

CASEY, District Judge.

Plaintiffs brought the above-captioned litigation against five national stock exchanges and various other defendants alleging violations of the antitrust laws with respect to the listing and trading of equity options. By Opinion and Order dated February 14, 2001 (the "Summary Judgment Order"), this Court granted summary judgment to defendants and dismissed the action, stating:

> This Court has no jurisdiction to determine whether [plaintiffs'] allegations have any substantive merit. Because the listing and trading of options classes falls within the purview of the regulatory scheme devised by Congress to govern the securities industry, and the active exercise of that authority by the Securities and Exchange Commission ("SEC") conflicts with the operation of the antitrust laws, the Court cannot proceed to adjudicate this matter. Accordingly, the Court hereby grants summary judgment to defendants as the antitrust laws have been repealed by implication regarding the circumstances at issue here.

Summary Judgment Order at 1.

Prior to the issuance of the Summary Judgment Order, plaintiffs had entered into settlement agreements with certain defendants providing for payments in excess of $84 million. Notwithstanding the dismissal of the action, plaintiffs continue to seek preliminary approval of those agreements. Plaintiffs now move pursuant to Fed.R.Civ.P. 59(e) for an order altering or amending the Court's prior decision in order to identify whether the Court continues to have subject matter jurisdiction over the action and, if so, allowing plaintiffs to proceed with the approval process. Plaintiffs argue that a grant of summary judgment on the basis

of implied repeal need not divest the Court of jurisdiction. The Court disagrees and concludes that it has no subject matter jurisdiction to entertain a class action settlement after the case has been dismissed.

## I. BACKGROUND

Beginning in February 1999, plaintiffs filed a number of class action antitrust complaints in various federal district courts against the American Stock Exchange, Inc. ("AMEX"), the Chicago Board Options Exchange, Inc. ("CBOE"), the New York Stock Exchange, Inc. ("NYSE"), the Pacific Stock Exchange, Inc. ("PCX"), the Philadelphia Stock Exchange, Inc. ("PHLX") and twenty-eight market-markers and specialist involved in options trading (the "Market–Maker defendants"). After the Panel on Multidistrict Litigation consolidated and transferred the actions to this Court for all pretrial proceedings, defendants moved in January 2000 for dismissal of the case, *inter alia,* on the ground that the antitrust laws were impliedly repealed by virtue of federal regulation over the challenged conduct.

During the pendency of the motion to dismiss, plaintiffs entered into settlement agreements with defendants PCX and PHLX. Plaintiffs filed the agreements with the Court in June 2000.[1] Several weeks thereafter, by Order dated July 11, 2000, the Court converted defendants' motion to dismiss into a limited motion for summary judgment on the issue of implied repeal only. Defendants responded by submitting additional papers in support of the motion.

During the pendency of the summary judgment motion, plaintiffs entered into proposed settlements with defendants AMEX and CBOE, as well as a number of Market–Maker defendants. Plaintiffs then requested that the Court stay the adjudication of the summary judgment motion for a four-month period in order to allow plaintiffs to pursue discovery relating to the fairness of the settlements and to complete the approval process. Plaintiffs' stay application was opposed by the non-settling defendants. By Order dated October 3, 2000, the Court declined to suspend the motion, noting that "given the potentially dispositive nature of the motion for summary judgment on the issue of implied repeal, plaintiffs' request is denied with leave to renew after the Court issues its decision on the implied repeal motion." The Court set November 8, 2000, as the date for oral argument.

On October 20, 2000, plaintiffs requested that the Court delay the oral argument for two months in order to allow plaintiffs to make a cross-motion for summary judgment on the implied repeal issue. Plaintiffs also reiterated their desire to conduct discovery on the fairness of the settlements, particularly as the agreements obligated plaintiffs to either confirm or withdraw from the settlements one week prior to the oral argument date. The Court refused to delay the disposition of the motion any further:

> The Court, having considered plaintiffs' proposal for a two-month continuance of the summary judgment hearing date, and the opposition thereto, hereby orders that plaintiffs' request is denied. The Court notes that motions to dismiss the case have been pending since January 2000, and that, at the Court's direction, additional briefing on the implied repeal issue was served in July 2000. Plaintiffs' application to suspend the hearing in order to file a cross motion now, at this late date, appears to be

---

1. Class actions may not be settled without Court approval. *See* Fed.R.Civ.P. 23(e).

a mere dilatory tactic. Plaintiffs have had ample time to move for summary judgment on their own behalf, but have failed to do so. In any event, plaintiffs will have an .immediate opportunity to argue their legal points in their opposition brief to the defendants' motion.

As for plaintiffs' argument that the November 8th hearing date may jeopardize their settlement progress with certain defendants, the Court notes that it was plaintiffs' decision to tie the settlement "walk-away" date to the oral argument. The Court will not postpone the hearing on the summary judgment motion any further merely so that plaintiffs can avoid the consequences of their own actions.

Finally, as previously made clear in the Court's Order dated October 3, 2000, given that the summary judgment motion is potentially dispositive, the Court will consider plaintiffs' request for preliminary approval of the settlement agreements after the motion is decided. Order dated October 26, 2000, at 1–2.

On February 14, 2001, the Court ruled that implied repeal was warranted pursuant to the Supreme Court's decision in *Gordon v. New York Stock Exch.*, 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975), and granted summary judgment to the defendants. Thereafter, on March 2, 2001, judgment was entered dismissing the case in its entirety. Plaintiffs now ask the Court to clarify its decision so as to provide continuing jurisdiction over this action, thus allowing the settlement approval process to go forward. For the reasons set forth below, the Court must reject plaintiffs' application.

## II. DISCUSSION

■ In order to approve a class-action settlement, the Court must have subject matter jurisdiction over the claims at issue. *See, e.g., Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 250–51 (S.D.N.Y. 1998); *Presidential Life Ins. Co. v. Milken,* 946 F.Supp. 267, 280 (S.D.N.Y.1996). However, by entering summary judgment in favor of the defendants on the implied repeal issue, this Court divested itself of subject matter jurisdiction over plaintiffs' antitrust claims. Indeed, the Court's Summary Judgment Order unequivocally states that the Court has "no jurisdiction" to examine the merits of plaintiffs' substantive allegations. Summary Judgment Order at 1. The Court sees no reason to modify its decision in any way.

■ Motions to alter or amend a judgment "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Trans. Inc.,* 70 F.3d 255, 257 (2d Cir.1995); *see also Building Service 32B–J Pension Fund v. Vanderveer Estates Holding, LLC.,* 127 F.Supp.2d 490, 492 (S.D.N.Y. 2001) ("[T]he burden is on the moving party to demonstrate that the Court overlooked controlling decisions or material facts that were before the Court on the original motion and might materially have influenced its earlier decision.") (citations omitted). Plaintiffs do not provide any controlling or persuasive authority which would require this Court to alter the Summary Judgment Order.

Plaintiffs argue that neither the Supreme Court nor the Second Circuit definitively has held that a finding of implied repeal divests the court of subject matter jurisdiction. However, in the *Gordon* case itself, the defendants argued in the district court that the challenged practices were exempt from the provisions of the antitrust laws so that the court was without subject matter jurisdiction over the action. *Gor-*

*don v. New York Stock Exch.*, 366 F.Supp. 1261, 1263 (S.D.N.Y.1973). The district court agreed, granting summary judgment to the defendants and holding that the "court lacks jurisdiction to entertain an anti-trust attack...." *Id.* at 1264. On appeal, the Second Circuit also characterized the implied repeal as a "withdrawal" of "antitrust jurisdiction." *Gordon v. New York Stock Exch.*, 498 F.2d 1303, 1309 & n. 8 (2d Cir.1974). Notably, the Supreme Court affirmed without any modification of that language.

Furthermore, a number of other courts also have phrased the doctrine of implied repeal in terms of jurisdiction. *See, e.g., Strobl v. New York Mercantile Exch.*, 768 F.2d 22, 27 (2d Cir.1985) (declining to imply repeal of "antitrust jurisdiction"); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 462 F.Supp. 1072, 1089 (N.D.Ill. 1978) (concluding that Court had antitrust jurisdiction over acts of unfair competition because no implied repeal was appropriate); *cf. United States v. National Ass'n of Securities Dealers*, 422 U.S. 694, 734, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975) (determining that implied repeal was necessary to free federal agencies "from the disruption of conflicting judgments that might be voiced by courts exercising jurisdiction under the antitrust laws").

Notwithstanding these decisions, plaintiffs argue that a ruling on implied repeal merely pertains to an affirmative defense and does not affect the Court's jurisdiction. Plaintiffs point out that subject matter jurisdiction is established upon the assertion of a non-frivolous claim arising under federal law. *See Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998);

*Spencer v. Casavilla*, 903 F.2d 171, 173 (2d Cir.1990). Plaintiffs argue that subject matter jurisdiction is thus appropriate here because at the outset of the litigation plaintiffs asserted a claim that could have entitled them to relief under a certain construction of the antitrust laws.

Plaintiffs are correct that federal subject matter jurisdiction was appropriate at the outset of the litigation because *at that time* a dispute existed as to whether the antitrust laws applied to plaintiffs' claims. However, through its Summary Judgment Order, the Court resolved this issue by holding that the antitrust laws were impliedly repealed with respect to the defendants' conduct and dismissed the case. At that point, there was no longer any cause of action over which the Court could exercise jurisdiction.

Plaintiffs apparently recognize that the Court cannot take any further action once it has rejected plaintiffs' claims in their entirety. Plaintiffs acknowledge that, in order to provide the Court with some mechanism by which to review the settlement, they were constrained to file a Rule 59(e) motion so as to toll their appeal of the Summary Judgment Order. *See* Fed. R.App. P. 4(a)(4).[2] Plaintiffs note that the filing of an appeal "would likely divest this Court of all jurisdiction in this action, including presumably jurisdiction to act on motions for preliminary or final approval of the settlement agreements...." Pls. Mem. in Support of Motion to Alter or Amend, at 7. However, unless this Court was inclined to withdraw the grant of summary judgment—which it is not—the mere filing of a Rule 59(e) motion does not resurrect jurisdiction over a dismissed action.

**2.** Although a pending appeal generally prohibits the district court from continuing to take action in a case, where a Rule 59(e) motion has been filed, the appeal is held in abeyance. After the reconsideration motion is decided, the appeal may proceed. *See id.; Woodard v. Hardenfelder*, 845 F.Supp. 960, 964–65 (E.D.N.Y.1994).

Nor can plaintiffs avoid the consequences of the Summary Judgment Order simply by requesting that the Court apply its decision only to the non-settling defendants. Although the settling defendants agreed to be bound by the terms of the settlements regardless of the outcome of the summary judgment motion,[3] those parties did not withdraw the motion or ask to be excluded at any time prior to the Court's decision. Litigants cannot simply opt out of unfavorable decisions after they are rendered. Nor can litigants confer continued jurisdiction on the Court by agreement. *See United States v. 27.09 Acres of Land,* 1 F.3d 107, 111 (2d Cir. 1993) ("[T]he parties may not confer subject matter jurisdiction on the court by consent.") (quoting *Cable Television Ass'n of N.Y., Inc. v. Finneran,* 954 F.2d 91, 94 (2d Cir.1992)).

Thus, this Court declines to modify its Summary Judgment Order in any manner. Because plaintiffs have filed a timely notice of appeal, they are free to pursue their remedies in the Second Circuit.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' motions for preliminary approval of their settlement agreements and to alter or amend the Court's judgment pursuant to Fed.R.Civ.P. 59(e) are hereby denied.

---

3. The PCX agreement provides that plaintiffs must return half of PCX's settlement payment in the event that a dismissal of the action becomes final after the exhaustion of all appeals. The PHLX agreement contained a similar provision, which has since been waived.