**BUILDING SERVICE 32B–J PENSION FUND, et al., Plaintiffs,**

v.

**VANDERVEER ESTATES HOLDING, LLC., Defendant.**

**No. 00 CIV. 0364(RWS).**

United States District Court,
S.D. New York.

Sept. 27, 2001.

Raab, Sturm & Goldman, New York (Ira A. Sturm, of Counsel), for Plaintiffs.

Jasinski and Paranac, Newark, NJ (David M. Walsh, of Counsel), for Defendant.

## OPINION

SWEET, District Judge.

Defendant Vanderveer Estates Holding, LLC ("Vanderveer") has moved to enforce a settlement agreement with plaintiffs Building Service 32B–J Health Fund, Building Service 32B–J Pension Fund, and Building Service 32B–J Annuity Fund (the "Funds"). For the reasons set forth below, the motion is granted, and this action will be dismissed upon the conditions set forth below.

### Prior Proceedings

Vanderveer and the Funds have litigated their differences since January 17, 2000, and Vanderveer and Building Services 32B–J (the "Union") have been in litigation since 1998. In the course of the proceedings, it has been concluded that the Union's arbitration award against Vanderveer was enforceable, *Bevona v. Vanderveer Estates Holding, LLC,* No. 98 Civ. 8689 (S.D.N.Y. Feb. 11, 1999), *aff'd,* 173 F.3d 843 (2nd Cir.1999) (table), that Vanderveer, although not subject to a preliminary injunction, would be ordered to file a $75,000 bond, *Building Service 32B–J Pension Fund v. Vanderveer Estates Holding, LLC,* 115 F.Supp.2d 459 (S.D.N.Y.2000), and that the Funds would be granted summary judgment, *Building Service 32B–J Health Funds v. Vanderveer Estates Holding, LLC,* 121 F.Supp.2d 750 (S.D.N.Y.2000), reconsidered, 127 F. Supp.2d 490 (S.D.N.Y.2001). By these proceedings the liability of Vanderveer to the Funds was established.

The instant motion to enforce a settlement was marked submitted on August 1, 2001.

### Facts

The parties to this litigation and the Union, through their representatives, met on January 11, 2001 to seek a resolution of all outstanding issues. Conversations took place thereafter, and a further meeting was held on March 8. After discussing a payout schedule for Vanderveer's obligations to the Fund and certain staffing issues, it was decided that the payments by Vanderveer would extend over four years, with the first payment to be made within ten days of signing a written agree-

ment. Around the same date, Michael Konig, a principal of Vanderveer, was advised that the terms discussed would be reduced to writing by Ira Sturm, attorney for the Funds. A week later, Sturm orally informed Konig that he was finalizing the written agreement and that it would be forwarded shortly. On March 26, 2001, Sturm forwarded a settlement agreement to Konig in the form attached as Appendix A (the "Agreement"). Paragraph 13 of the Agreement stated, "This Agreement is contingent on the approval of the Trustees of the Fringe Benefit Funds to settle the Funds' claims in the manner provided for herein."

On April 5, 2001, Sturm, apparently acting also as counsel for the Union, forwarded a memo to Vanderveer concerning a severance pay issue and retroactive wage increase implementation. He indicated that a District Chairman of the Union had updated him on these "two issues that were not included in the written proposal that I made but that were discussed in our meeting." The memorandum then discussed the Union's understanding of the severance package issue and clarified that the contractual wage increases were to go into effect retroactive to April 21, 2000 for applicable employees.

On April 12, 2001, counsel for Vanderveer called to determine the status of the settlement. No response was received that day. A notice of appeal was filed to protect Vanderveer's right in connection with the judgment which had been entered against it. Shortly thereafter, counsel for Vanderveer was informed by Vanderveer that the matter was settled, and Vanderveer did not file Forms C & D in connection with its appeal.

On April 26, 2001, the press reported a number of arrests in connection with an organized crime scheme. One of those arrested was Abraham Wieder, described in the Agreement as "the principal of the Employer" who was replaced by Konig. Another was Ismet Kukaj, a business agent of the Union. The same day, a letter on the firm letterhead of the Funds' counsel withdrew the offer of settlement on behalf of the Union.

On June 14 the Court of Appeals issued its mandate dismissing the appeal for failure to file Forms C & D. On June 22, 2001 the instant motion was brought.

On July 2 the Union filed a grievance against Vanderveer relating to a reduction in force.

### An Agreement Was Reached Between the Funds and Vanderveer

■ Both parties in this litigation recognize *Ciaramella v. Reader's Digest Association, Inc.*, 131 F.3d 320 (2nd Cir. 1997) as setting forth the legal standard with respect to the enforcement of settlement agreements. In that case, the Second Circuit applied a four-part test to determine whether a settlement agreement was in fact made, recognizing that whether a binding agreement exists depends on the parties' intent to be bound. *Id.* at 322 (*citing Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80–81 (2d Cir. 1985)). The four factors include: (1) whether there is any express reservation of the right not to be bound absent a signed writing; (2) whether there has been partial performance of the settlement contract; (3) whether there has been agreement on all the terms of the alleged settlement contract; and (4) whether the agreement is of a type usually committed to writing. *Ciaramella*, 131 F.3d at 323; *Winston*, 777 F.2d at 80 (*citing R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir.1984)). None of these factors is dispositive. *Id.*

### 1. *Express Reservation*

 In determining whether there was an express reservation of the right not to be bound absent a written agreement, courts look to both the agreement itself and to the parties' surrounding communications. In both *Winston* and *Ciaramella,* the Second Circuit found numerous indications within the agreement that the parties in that case did not intend to bind themselves until a settlement had been signed. *See Winston,* 777 F.2d at 81–82; *Ciaramella,* 131 F.3d at 324–25. For instance, in *Ciaramella* the court called attention to a clause which stated that the agreement "shall not become effective . . . until it is signed." 131 F.3d at 324. The court also found as persuasive evidence the presence of a merger clause which provided that the agreement constituted "the complete understanding between the parties" and that "[n]o other promises or agreements shall be binding unless in writing and signed by the parties." *Id.* Here, no such provisions exist to indicate that the parties intended to be bound only upon formal execution. Nor do any subsequent communications indicate the parties' intent to condition the enforceability of the settlement upon a signed written agreement.

Plaintiffs argue that paragraph 13 of the Agreement, making the Agreement "contingent upon the approval of the Trustees of the Fringe Benefit Funds," indicates the presence of such intent. This argument is rejected. While paragraph 13 may provide evidence of the Funds' desire to condition settlement on approval by its Trustees, it does not require the board's signature or provide any other indication that the Funds did not wish to be bound

until the document was fully executed. Further, any such conditions that may have existed were presumed to have been met on the basis of Sturm's actions following the oral agreement on March 8. On or around that date, Sturm informed Konig that he would reduce the Agreement to writing and forward it to Konig for his signature. It was agreed that the signature date would serve as a trigger date for Vanderveer to make its first payment. Approximately one week later, Sturm advised Konig at a meeting that he was finalizing the Agreement and would forward it shortly thereafter. Thus, the behavior of both parties revealed a clear intention to enforce the March 8 agreement, with the writing serving to memorialize that Agreement.[1]

Absent any evidence of an intent not to be bound by the oral agreement, the first factor weighs in favor of enforcing the contract.

### 2. *Partial Performance*

 The second factor to be considered is whether a party has partially performed "and that performance has been accepted by the party disclaiming the existence of an agreement." *Ciaramella,* 131 F.3d at 325 (*citing R.G. Group,* 751 F.2d at 75). Here, there was no partial performance of the terms of the Agreement. On the other hand, there was partial performance of the Agreement to the extent that Vanderveer, in reliance on the Agreement, failed to perfect its appeal to the Second Circuit. *See Alvarez v. City of New York,* 146 F.Supp.2d 327, 336 (S.D.N.Y.2001) (finding reliance on the apparent settlement as evi-

---

1. The mere fact that the oral agreement was later reduced to writing does not necessarily indicate an intent to be bound only upon written execution. *See Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.,* 145 F.3d 505, 508 (2d Cir.1998); *Winston,*

777 F.2d at 80 (stating that "freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement" and that such an intent "will not prevent contract formation prior to execution.").

dence of partial performance). From March 8 through late April, the Funds gave every indication that a binding settlement had been reached in the March 8 meeting. On this basis, Konig informed Vanderveer's attorney that the matter had been settled and the appeal would not have to be perfected. It was not until April 26—the day it was reported that a former principal of Vanderveer and a Union agent had been accused of wrongdoing—that Sturm informed Konig that he sought to withdraw from the settlement. But even at that point, as indicated in his letter of April 26, 2001, Sturm was acting exclusively on behalf of the Union. The Funds gave no indication that they wished to resume active litigation.

Because of these competing facts, this factor does not weigh for or against enforcing the Agreement.

### 3. *Terms Remaining to be Negotiated*

■ The Funds claim that the memorandum from Sturm to Konig on April 5, 2001, discussing two additional items that were not included in the March 26 draft, demonstrates that there remained additional material terms to be negotiated in the settlement. This claim is without merit.

The April 5 memorandum discusses only an enhanced severance package and a retroactive wage increase, issues that bear only upon Vanderveer's obligations to the Union. It discusses neither the Funds nor any contractual matters pertaining to the Funds. Further, the memorandum specifically states that the issues were raised by a District Chairman of the Union, and refers only to the Union's understanding of those issues. The terms of the Agreement between Vanderveer and the Funds are fully set forth in the writing prepared and forwarded by the attorneys for the Funds following the March 8 meeting. Aside

from two inconsequential additions by Konig prior to signing that document on behalf of Vanderveer, neither the April 5, 2001 memorandum nor any other communication between the Funds and Vanderveer reflects an intent to change the terms of the oral Agreement between those two parties. Accordingly, this factor weighs on the side of enforcement.

### 4. *Type of Agreement Usually Reduced to Writing*

■ Both of the parties acknowledge that the settlement agreement at issue is the type normally reduced to writing. Plaintiffs argue that this never occurred, presumably because they never signed the document that was forwarded to Konig for his signature. But the mere absence of a signature does not alone necessarily defeat an otherwise complete written agreement. *See, e.g., Alvarez,* 146 F.Supp.2d at 337 (finding as enforceable a settlement agreement that was substantially complete but not signed and had only a couple of issues to be negotiated). Here, attorneys for the Funds themselves reduced the Agreement to writing for Vanderveer's approval. This document reflected many weeks of negotiation. All of the terms of the Agreement had been reduced to writing, and there was no further negotiation between Vanderveer and the Funds over any material terms. Thus, this factor weighs in favor of enforcing the Agreement.

In sum, three of the four factors discussed above indicate that the Funds and Vanderveer intended to be bound by the oral settlement agreement. Of course, the Union is not a party to this action, and has sought to withdraw its offer to settle. The Trustees of the Funds have not. Under the *Ciaramella* factors, this action has been settled.

## Conclusion

The motion to enforce the settlement is granted, the payment by Vanderveer will be made within ten (10) days of the filing of this opinion and upon such filing a motion to dismiss this action will be entertained.

It is so ordered.

## APPENDIX

### *AGREEMENT*

Whereas, Local 32B–32J, Service Employees International Union, AFL-CIO (Union), and Vanderveer Estates Holding, LLC (Employer), have been engaged in an ongoing dispute; and

Whereas, the Union has successfully enforced an arbitration award against the Employer in the matter captioned *Bevona v. Vanderveer*, SDNY Docket No. 98 CIV 8689; and

Whereas, the Building Service 32B-32J Fringe Benefit Funds (Funds) have successfully prosecuted another matter against Employer, captioned as the Building Service 32B-32J Health Fund, et al. v. Vanderveer, SDNY Docket No. 00 CIV 0364, wherein the court found the Employer liable for contribution owed to the Funds; and

Whereas, the Union and the Employer have attempted to reach an agreement on a successor agreement to the 1998 RAB Apartment House Agreement covering the unit of employees employed by the Employer; and

Whereas, the principal of the Employer, Abraham Wieder has been or will be replaced by Michael Konig; and

Whereas, Michael Konig, as the new controlling principal of the Employer, has expressed a desire to achieve labor harmony with the Union; and

Whereas, the Union and the Funds recognize that continued litigation against Employer, with Abraham Wieder as its principal, could result in continuing litigation with questionable ability as the whether sufficient assets will exist from which to collect upon any future judgments; and

Whereas, the parties have reached an agreement to resolve past problems and enter into a current collective bargaining agreement:

**IT IS HEREBY AGREED** by the undersigned parties that:

1. Abraham Wieder no longer holds any interest in the facility known as Vanderveer Estates Holding, LLC, the Employer herein.

2. Michael Konig, in his new capacity of general partner, agrees to bind Employer to this Agreement.

3. The Employer shall assent to the 2000RAB Apartment House Agreement effective April 21, 2001 (Agreement). The Employer also agrees to assent to the next RAB Apartment House Agreement effective April 21, 2003.

4. Prior to April 1, 2001 the Employer shall have the right to reduce the staffing level at the facility to 27 full time bargaining unit employees. The reduction shall be accomplished in reverse seniority and in accordance with provision of the Agreement. All affected employees shall be entitled to severance pay and payment of accrued benefits as provided for in the Agreement.

5. The Employer shall have the further right to reduce staffing by three additional bodies on April 1, 2002, three additional bodies on April 1, 2003, and one additional body on April 1, 2004. The staffing level shall then remain at twenty bargaining unit members. The Agreement provision regarding subcontracting of bargaining unit work shall apply only to the extent of twenty employees contractually with the bargaining unit. The Employer may expe-

dite the reductions in force by voluntary resignation, retirements, or through the offer of enhanced severance packages to individual unit employees, to induce them to resign or retire.

6. The Employer agrees to comply with any arbitration award that may be rendered by Arbitrator William Schecter in connection with the backpay hearing in OCA Case No. ——.

7. The Employer agrees to pay to the Fringe Benefit Funds the principal balances owed since Vanderveer purchased the property summarized as follows:

| QRT DUE DATE | NO. OF EMPLOYEES | HEALTH PRINCIPAL | PENSION PRINCIPAL | ANNUITY PRINCIPAL |
|---|---|---|---|---|
| 7/1/98 | 43 EMP | 82,997.53 | 5,111.84 | 1,204.00 |
| 10/1/98 | 43 EMP | 62,055.88 | 16,613.48 | 3,919.00 |
| 1/1/99 | 43 EMP | 62,055.88 | 16,613.48 | 3.919.00 |
| 4/1/99 | 43 EMP | 62,055.88 | 16,613.48 | 3,919.00 |
| 7/1/99 | 43 EMP | 62,055.88 | 16,613.48 | 3,919.00 |
| 10/1/99 | 44 EMP | 63,980.09 | 18,349.30 | 4,496.00 |
| 1/1/00 | 44 EMP | 63,499.04 | 18,675.80 | 4,576.00 |
| 4/1/00 | 44 EMP | 63,499.04 | 20,849.40 | 4,576.00 |
| 7/1/00 | 44 EMP | 63,499.04 | 20,849.40 | 4,576.00 |
| 10/1/00 | 44 EMP | 63,499.04 | 20,849.40 | 4,576.00 |
| 1/1/01 | 44 EMP | 63,499.04 | 20,849.40 | 4,576.00 |
| 4/1/01 | 44 EMP | 63,499.04 | 20,849.40 | 4,576.00 |
| | | TOTAL PRINCIPAL FOR ALL FUNDS | | 1,043,676.98 |

8. The Employer shall be credited for each employee on its payroll within the bargaining unit, that the Employer's payroll records establish that the number of actual unit employees as being lower than the number of employees listed above. The credits shall be applied against the last payment of the payout schedule set forth below.

9. The Employer shall, within ten days of all approvals necessary for this settlement, pay to the Funds, care of Raab, Sturm & Goldman, LLP, 440 Park Avenue South, New York, New York 10016, the sum of $208,735.38, allocated as $155,239.07 to the Welfare Fund; $43,508.72 to the Pension Fund; and $9,987.60 to the Annuity Fund. The balance shall be paid in four installments of $208,735.38 payable and in the same manner or as otherwise instructed by the Funds, on or before April 1, 2002, April 1, 2003, April 1, 2004 and April 1, 2005. Interest shall accrue on the unpaid principal balance from April 1, 2001 at the annual rate of 8%, said sum to be paid in the final installment due and payable on April 1, 2005.

10. In the event of a default by the Employer, as defined below, all unpaid principal shall become due and payable immediately. In addition the Funds shall be entitle to assess upon the unpaid principal all statutory and contractual damages retroactive to the dates when the principal first came due. The Funds shall immediately be entitled to the posting of a security by the Employer in the amounts due

and the entry of judgment thereon by a court of competent. The Employer shall further be responsible for all costs and attorneys fees incurred by the Union and/or the Funds in connection with the collection of the defaulted sums described herein.

11. A default shall be defined as a failure by the Employer to pay any of the installment payments described in paragraph 7 hereof when due and after having received notice of a failure to pay by written notice from the Union of the Funds, by certified mail, Return Receipt Requested, to the Employer's address as provided to the Union, and the failure by the Employer to cure same by making payment within ten business days of receipt of the notice.

12. The parties agree to execute all documents necessary to carry out the terms of this settlement, including withdrawal of all unfair labor practice charges filed by the Union at the National Labor Relations Board against Vanderveer discontinuance of the Federal Court actions.

13. This agreement is contingent upon the approval of the Trustees of the Fringe Benefit Funds to settle the Funds' claims in the manner provided for herein.

14. Disputes concerning the interpretation or application of any provisions of this settlement, except those rights set forth in paragraph 10 hereof, shall be resolved in accordance with the arbitration provision of the Agreement.